Hon. GEORGE ROGERS KING, ⎱ *Associate Justices.*
Hon. THOMAS SLIDELL, ⎰

|     |     |
| --- | --- |
| 3   | 569 |
| 118 | 757 |
| 119 | 820 |

| 3    | 569 |
| ---- | --- |
| f125 | 370 |

### SNODDY v. BRASHEAR et ux.

The action of rescision for lesion beyond a moiety is personal to the original vendee, and can-not be maintained against a subsequent purchaser in good-faith. Art. 1871 of our Code is substantially the same as art. 1681 of the Code Napoléon, from which our law on the sub-ject of lesion beyond moiety was taken, with the exception that the provision in relation to third persons has been entirely omitted.

APPEAL from the District Court of Avoyelles, *King*, J. *Elgee* and *Hy-ams*, for the plaintiff, cited C. C. 2567 *et seq.* Pothier, Vente, nos. 332, 334. *Taylor* and *Swayze*, for the appellants. The action of lesion is limited to the original vendee. 11 Mart. The following opinion of the court was pronounced, on the first hearing of the case, by

ROST, J. The plaintiff sues for the rescision of a sale of land made by her to the defendant, *C. D. Brashear*, on the ground of lesion beyond moiety. The petition alleges that *Eliza*, the wife of *C. D. Brashear*, has now the legal title, having purchased the land at a sheriff's sale made of it as the property of her husband. Judgment is asked against both the defendants. They filed a general denial, and *C. D. Brashear* set up other grounds of defence, which it is not necessary to notice. There was judgment in favor of the plaintiff in the first instance, and the defendants appealed.

The counsel for the defendant, *Eliza E. Brashear*, has made the point that, under the provisions of the Civil Code, the action of rescision on account of lesion beyond moiety, is personal to the original vendee, and cannot be main-tained against a subsequent purchaser in good faith.

---

*Rost, J. was not present during this term.

SNODDY
v.
BRASHEAR.

It was a controverted point among civilians, whether, under the roman law, this action reached *bonâ fide* third possessors. Voet and Fachinœus, two of the ablest of them, were of the opinion that it did not, and that it was purely personal to the first vendee. This was not, however, the common opinion. See Troplong, De la Vente, no. 801, and the authorities there cited.

In France, before the adoption of the Napoléon Code, the action of rescision was allowed against third possessors, and the concluding part of article 1681 of that body of laws implies its maintainance under the new system. The dispositions of our Code on the subject of lesion beyond moiety are taken from the Napoléon Code, and article 1681 of that Code is substantially the same as article 1871 of ours, with the remarkable difference that the provision in relation to third possessors has been entirely omitted. This omission was not unintentional; and, in our opinion, justifies the belief that the legislature intended to restrict the action to the party to the contract which gives rise to it. The action thus limited, is analogous to that which the vendor of moveable effects has to enforce a privilege upon them for the price, so long as they remain in the possession of the vendee.

In the case of *Bradford's heirs* v. *Brown*, 11 Mart. 217, the former Supreme Court held the action to be personal to the first vendee; and, in default of any provision of law upon which the liability of subsequent purchasers can be based, that case appears to us a correct application of the rule that, the title of an honest purchaser is not affected by the latent equities existing between the previous holders of the property purchased.

We cannot distinguish this case from that of *Richardson* v. *Hyams*, 1 Ann. Rep. 287. In that case there was a declaration of *Winn*, on the public records of the country, acknowledging an unencumbered title in *Friend*, to lands purchased by *Winn* from the United States. After the land had passed into the possession of third persons, we held *Winn* bound by his declaration, although it was shown to have been made without consideration. The only difference between the two cases, is, that the present plaintiff received nearly one half the value of the land sold by her, while *Winn* received nothing whatever for the transfer he made. This difference cannot surely affect the principle of the decision, or modify it in favor of the plaintiff's claim. See 9 La. 290. 11 La. p. 408.

The plaintiff alleges the legal title to be in *Eliza E. Brashear*; she contests neither her capacity nor her good faith. *Eliza E. Brashear* is to all legal intents a third possessor; her husband was the master of the community; the property in controversy was sold as his own to pay debts, which he was, under all circumstances, bound to pay; his wife had no title to it before her purchase, and could not, therefore, have been affected by latent equities existing between the plaintiff and her husband.

---

## SAME CASE—ON AN APPLICATION FOR A RE-HEARING.

*Elgee*, for the plaintiff, for a re-hearing. The court maintains, as the basis of its opinion, that the action for rescision on account of lesion is a personal action, and restricted to the first purchaser. It admits that the question was

much controverted amongst the civilians, and concedes that the " common opinion" was favorable to its being considered as a real action. Voet and Fachinœus are stated to have entertained a contrary opinion.

To understand the question properly, our first enquiry must be, what was a real action in the roman law, and what a personal, and then apply the test to the case at bar. " Actio realis dicta. est ex re, quæ 'petitur ; puta quando quis nullo jure mihi obligatus est, sed volo illi questionem super aliqua re movere. Personalis dicitur, quando persona obligata est." The real action is defined by Pothier : " Est celle que celui qui est propriétaire d'une chose, ou qui a quelque droit dans cette chose, a contre le possesseur, pour qu'il soit tenu de lui délaisser la chose, ou de le server ou laisser jouir du droit qu'il y a. L'action personelle est celle qu'a un créancier contre son débiteur, pour qu'il soit tenu d'accomplir l'engagement qu'il a contracté envers lui. L'action réelle, qui nait d'un droit que quelqu'un a dans la chose, suit la chose, et se donne contre ceux qui la possèdent." These definitions have been closely followed in our Code of Practice.

In the case before the court, it is the land which is claimed, the thing itself; and this feature is peculiar to the action of lesion, that whilst the vendor must bring his action for the property, the vendee or third possessor has the faculty or power of resolving it into a personal liability by assuming to pay the just price. So entirely free was this form of action from having any thing personal in it, that it was, and is, considered entirely immaterial whether the purchaser was in good or bad faith, the simple question being, whether the price paid was less than one-half of the fair value of the thing. Domat says : " Cette rescision, à cause de la vilité du prix, est indépendante de la bonne ou mauvaise foi de l'acheteur ; et soit qu'il ait connu ou ignoré la valeur de la chose vendue, il suffit pour résoudre la vente, que le prix soit moindre que la moitié de cette valeur." And the Code : " Etsi nullus dolus intercessit stipulantis sed ipsa res in se dolum habet." The defect in the contract was so great that, in the eye of the law, the purchaser was not considered as having acquired any property in the thing sold ; there was *dolus re ipsa*, and the court upon proof thereof directed the party, whether purchaser or third possessor. to pay the fair value of the property or give it up. Vide Troplong, Con. de Vente, no. 801–2.

It was, indeed, a contested point amongst the commentators, whether the rescissory action should not first be brought against the original vendee,and then, upon judgment being obtained, a new suit be instituted against the third possessor. The opinion is now well fixed, that both, as in the present instance, may be sued together. See Troplong, *loc. cit.* But no doubt was ever entertained by commentators, excepting Voet and Fachinœus, but that the third possessor could be sued ; and even Voet himself admits, that where there was evident collusion, it might also be done. Pothier, Con. de Vente, no. 356, says: "Cette action est, actio utilis in rem ; elle doit s'intenter contre celui qui est en possession de l'héritage, soit que ce soit l'acheteur, soit que ce soit un tiers détenteur à qui cet héritage est passé. Troplong is to the same effect ; he says that Voet and Fachinœus have deviated from the generally received opinions in relation to the ancient jurisprudence on the subject, which, he asserts, "alors comme aujourd'hui autorisait l'action en rescision contre un tiers possesseur, successeur à titre particulier." The opinions of Pothier and of those with whom he concurred, were based upon a law precisely similar to ours. The Code of 1825, when treating of lesion, quotes verbatim the language of the Code of 1808, whilst, in its turn, the language of the Code of 1808 is precisely what the law was in France prior to the promulgation of the Code Napoléon. See Domat, Con. de Vente, Pothier, &c. If it be true, that the action of lesion is an action against the thing itself; if it be true that the plaintiff has, in the present instance, strictly pursued the law, and merely claimed her property, and these points cannot be denied, it is impossible to see how such proceedings can be considered personal actions.

The court does not undertake to decide the question raised by Voet, and so triumphantly refuted by Charondas and others. It leaves the question as it found it, with this remark, that the opinion of Voet and Fachinœus " was not the common opinion."

The opinion in this case is based upon a difference between art. 2569 of our Code and art. 1681 of the Code Napoléon. The latter has this clause : " Le tiers possesseur a le même droit, sauf sa garantie contre son vendeur," and

from its not being found in the Code of 1825, the court conclude that the redacteurs omitted it for some good reason ; and this reason the court assumes to be, that they were opposed to extending the action against third possessors.

The court admit that, the insertion of this clause in the Code Napoléon did not alter the law as it existed in France prior to the adoption of the Code, but merely " implied its maintenance under the new system ;" that, therefore, if it had not been inserted in the Code Napoléon, the right would still have been maintained in France. If, then, the law in France, prior to the adoption of the Code Napoléon, admitted of this action against third possessors, and ours is now, and always has been the same as the french law, for the Code of 1808 and that of 1825 are identically the same on this subject; and it is conceded that the provision annexed to art. 1681 of the french Code introduced no new legislation on the subject, but was merely enunciative of the generally recognized doctrine on the subject, the casual omission of a clause, not necessary, under the existing french law, cannot be interpreted into an absolute legislative prohibition against the exercise of the action against third possessors. A more satisfactory reason than that advanced can be given for the incorporation into the text of art. 1681 of the Code Napoléon, of the clause relative to third possessors. When the 1681st art. was before the jurisconsults employed to frame the Code, Napoléon suggested the insertion of a new provision, differing entirely from the old, to wit, that the purchaser, if he preferred, might pay the supplement of the price, "sous la deduction du dixième du prix total." This new provision was adopted, and forms now a portion of art. 1681. Being the introduction of an entirely new provision, it is not unreasonable to suppose that the clause "le tiers possesseur a le même droit," was added to remove any doubts which might arise whether the indulgence accorded to the first purchaser of paying the supplement of the price, subject to a deduction of one-tenth, should be considered personal to him, or might be enjoyed by the third possessor. Our Code of 1825 does not contain the addition to the old law of "sous la deduction du dixième du prix total" ; and, therefore, the framers of it did not consider it necessary to add the words, "le tiers possesseur a le même droit." Had the Code of 1825 never been framed, nor the Code Napoléon, we should be left to the Code of 1808 ; the french, to the civil law, as it existed in Pothier's time. That law, upon the subject of lesion, is the same as that which is to be found in the Code of 1808, and, therefore, the authority of Pothier and others, who wrote upon the subject, will be held as authority by us. The Code of 1825 left the law exactly as it found it, so that the old french civilians must be held to be good authority with us, on the point, up to the present moment.

The court compares art. 1681 of the Code Napoléon with art. 1871 of our Code. Art. 1871 has but little to do with the present enquiry. Art. 2569 is the article really corresponding to the 1681st of the Code Napoléon.

The limitation of the action of lesion to the original party purchasing, is assimilated to that of a vendor of moveable effects seeking to enforce his privilege upon them, which he can only do so long as they remain in the hands of the original purchaser. But art. 3194 declares positively that the vendor can only maintain his privilege "if the property still remains in the possession of the purchaser" ; while there is no limitation as to the person in the chapter treating of lesion in sales—the only limitation is as to time, which is fixed at four years between majors, whilst between minors the prescription is suspended during minority. The very length of time given for bringing this action, is a strong and convincing proof, that the law-maker must have contemplated the possibility of the property passing into third hands; but, considering the vice so great as to attach itself to the thing, it was permitted to the vendor to get it back, upon the legal inference that he had really never sold it; and so, as has been before stated, the civilians held that the action lay " Etsi nullus dolus intercessit stipulantis, sed ipsa res in se dolum habet." D. l. 18, cap. De Rescindenda Venditione.

The case of _Bradford's heirs_ v. _Brown_, 11 Martin, cited by the court, was a petitory action, not an action for the rescision of a sale on account of lesion. The suit was brought against a third party _(Brown)_ who cited in his warrantors, the heirs of _Flower_, who in his lifetime had purchased the premises in dispute from _Bradford_. On the warrantors' offering in evidence the deed from _Bradford_ to their ancestor, the reception of it in evidence was objected to, because it was a nullity, lesion being apparent on the face of the instrument, the consideration being stated therein to be one dollar. The court merely say, that

it could not be treated as a nullity; that an action should have been brought to declare it void, leaving to the purchaser to make his election, either to give the property up. or pay the supplement of the just price. This was the question before the court, and thus was it decided. The dictum of a court on a question not before them, has never been held to be of any binding authority.

This court, however, say, in conclusion, that this, at most, is a latent equity, and that third parties, purchasing in good faith, must be protected. I am not disposed to question the general correctness of the principle, for which, however, no textual provision of the Code can be found, but, being a mere equitable conclusion, plain and obvious texts of law ought not to be defeated by it. The law has expressly given to the plaintiff four years within which to commence her action; she has done so. The law expressly says that the action lies against the thing itself, not against the person; she has so brought her action. The best commentators on our law have said that, being an action against the thing, it lies against the third possessor; and that, to avoid a circuity of actions, the original purchaser and third possessor may be sued at the same time; the plaintiff has done so. The same commentators say, that the third possessor cannot complain, because he has his recourse in warranty against his vendor; the same right is accorded here. It will be said, perhaps, that the limitation of four years is nothing, because ten are given within which to bring an action for the annulment of a contract on the grounds of error or fraud; and that no body will contend that the property passing into third parties' hands, *bonâ fide*, can be affected by the error or fraud. This, no doubt, is an exception introduced for the security of titles and the peace of society; though the true and real difference is to be found in this, that actions for the annulment of contracts on the grounds of error or fraud, are personal actions, while the action of lesion is a real action—*dolus re ipsa*.

" Cette action," says Pothier, "est une action utilis in rem et non directa." Con. de Vente, no. 331. But is lesion, in truth, a latent equity ? Is it not a vice which materially affects the contract of sale ? The law certainly says it does. This vice, or defect, was not, in the present instance, hid from the eye of the honest purchaser! The title deeds of the vendor exhibited this defect; it was patent—the error, vice, or defect, was spread upon the public records.

The judgment of the court on the re-hearing, was pronounced by

SLIDELL, J. After a careful reëxamination of this case, which is obscurely presented by the pleadings and evidence, our minds are left in doubt whether the land purchased by *Brashear* was community property; and, if so, whether, at the time of the subsequent purchase at judicial sale by *Mrs. Brashear*, she had ceased to have an interest in the community. Both these questions may be important in the decision of this cause. They may have a material influence upon the legal question, whether *Mrs. Brashear* can be considered as a third person, purchasing in good faith and exempt from liability. Without wishing to be considered as now expressing an opinion upon the legal question under the hypothesis that the property once belonged to the community, and that she had not ceased to have an interest in the community before her purchase at sheriff's sale, we think it best to remand the cause for further evidence. When principles of grave moment are involved, the court prefers not to act upon an hypothetical or doubtful state of facts.

We will merely say for the present that, we adhere to the opinion that the action of lesion does not extend to third persons purchasing in good faith from the vendee; and that *Brashear* must be held personally responsible, if there was lesion, even if his wife's purchase should be maintained.

It is, therefore, decreed that the judgment rendered by the court below be reversed, and that this cause be remanded for a new trial and for further proceedings according to law: the plaintiff paying the costs of this appeal.