NORTH AMERICAN LAND & TIMBER CO., Limited, v. WATKINS et al.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1901.)

No. 1,059.

1. RECEIVERS—AUTHORITY TO APPOINT—PRIVATE CORPORATIONS.

A court of equity is not authorized to appoint a receiver for a solvent private corporation by an order made ex parte, without notice, at the suit of a minority stockholder, where the management of the corporation by its officers and directors is not alleged to be fraudulent, dishonest, or ultra vires, merely on the ground that, in the opinion of the complainant, such management is unwise and detrimental to the interests of the stockholders. Upon a matter of mere judgment, a court cannot properly interfere with the management of the corporation by a majority of its stockholders.

2. SAME—WHEN ONLY SHOULD BE APPOINTED WITHOUT NOTICE.

The appointment of a receiver after notice before final trial is a jurisdiction which should be exercised with great care and with studious effort to avoid mistake and oppression; and to appoint a receiver without notice is a jurisdiction and power that should be rarely used, and never except in a clear case of imperious necessity, when the right of the complainant, on the showing made by him, is undoubted, and when such relief and protection can be given in no other way. When such notice can be given, it should be given, unless there is imminent danger of loss, or great damage, or irreparable injury, or the greatest emergency, or when by the giving of notice the very purpose of the appointment of a receiver would be rendered nugatory; and such instances are of rare occurrence in the federal courts, because of their power, when

an, injunction is asked for, to grant a temporary restraining order (Rev. St. U. S. § 718), which may be served at the same time that the notice is served, to prevent action by the defendant or his agent, and to preserve the existing conditions until the application for an injunction and for a receiver can be heard.

3. SAME—GROUNDS FOR APPOINTMENT—SUIT BY MINORITY STOCKHOLDER.—
A bill alleged that complainant was a large stockholder in defendant, which was a foreign corporation chartered with power to buy and sell lands in the United States, and which owned in the state of Louisiana 800,000 acres of land, an irrigating canal, with pumping stations, one or more steamboats, and a large amount of. other property, consisting chiefly of choses in action and cash in banks; that the corporation, over complainant's protest, had contracted to sell 155,000 acres of its lands for $3 per acre, which were worth many times such price, and upon terms very disadvantageous to the stockholders. No fraud was charged, nor any facts alleged showing the intrinsic value of the lands to be greater than the price obtained, except that oil had been discovered 20 or 30 miles distant; nor that any one else would purchase them at a greater price. The bill prayed for an injunction, and the appointment of a receiver for all the property of the corporation in the state, with authority to bring suit for cancellation of the contract. *Held*, that the allegations of the bill did not warrant the appointment of such receiver, either under the general principles of equity jurisprudence, or under the statute of Louisiana (Acts 1898, No. 159, p. 312, § 2) authorizing the appointment of a receiver "at the instance of any stockholder or creditor when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business, or by committing acts ultra vires, or by wasting, misusing or misapplying the property or funds of the corporation."

4. SAME.
A federal court of equity is not warranted in appointing a receiver for a corporation at suit of a minority stockholder, for the purpose of having such receiver bring a suit to set aside a contract made by the corporation for a sale of lands under the statute of Louisiana (Merrick's Rev. Civ. Code 1900, arts. 2589–2591), which permits a vendor to obtain a rescission of sale of. real estate when it has been sold for less than half its just value, where the corporation is solvent and the only ground for impeaching the sale is the alleged inadequacy of the price, which is satisfactory to a majority of the stockholders.

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

This is an appeal from an interlocutory order, rendered ex parte and without notice, appointing a receiver of all the property of the appellant corporation situated in the state of Louisiana. It is alleged in the bill that the appellant is an English corporation, chartered with power to buy and sell lands in the United States, and with other powers not material to mention. The capital stock of the corporation is about $630,000, of which the complainant holds $178,000. The property of the corporation consists of about 800,000 acres of land situated in Louisiana, which it has owned since 1883. It also owns a canal for the purpose of irrigating its lands. canal pumping stations, one or more steamboats, and large amounts of choses in action, due to the corporation as the price of land sold by it; and it also holds cash on deposit in a bank or banks at Lake Charles and elsewhere in Louisiana, and other property. In 1897 the directors of the company appointed A. V. Eastman as manager of the company in the state of Louisiana. He is compensated by a salary, the amount of which is not stated, and by commissions upon the sales of real estate made by him. The officers of the corporation do not exercise personal supervision in Louisiana over the affairs of the company in Louisiana. Walter S. B. McLaren, chairman of the board of directors of the corporation, paid a visit in March, 1901, to the parish where part of the lands is situated; and re-

mained there several days. He had frequent conversations and interviews while on that visit with the appellee Watkins. In one of these conversations he admitted that the contracts of sale, which will hereafter be stated, "had not displayed good business judgment, and that he knew that great losses had been made in the premises." The sales referred to are described in the bill as follows: "That your orator, whose business takes him to different places in the United States, but whose interests in the parishes of Calcasieu and Cameron, through his ownership of stock in the defendant corporation and otherwise, are very large, reached Lake Charles, in the parish of Calcasieu, on the forenoon of the 6th day of February, 1901, and during that day heard, as a matter of common rumor on the streets of Lake Charles, that the North American Land & Timber Company, Limited, had sold or contracted to sell about one hundred and three thousand (103,000) acres of its land to one P. Higgins at a price of only three dollars ($3) per acre. That your orator, although he held no official position in the management of the corporation, had a large proprietary interest in its stock as aforesaid, and did, therefore, after assuring himself of the probable truth of said rumors, and that the lands referred to consisted of the said very valuable tract of land lying in the parish of Cameron, along the east shore of Sabine Pass, and that the sale of the same at any such vile price as three dollars ($3) per acre would be most disastrous to him, as well as to the other stockholders in said corporation, at his own expense sent a cable dispatch to J. W. Chalkley, secretary of the North American Land & Timber Company, Limited, at London, England, in the following words, to wit: 'Sale one hundred thousand acres disastrous. Do not approve. Land worth many times price named. Timber Company. Answer quick.' That to this telegram the management of the company has up to this date vouchsafed no answer, either by telegram or by letter, to your orator. That your orator has since learned that said lands were not only contracted to be sold as aforesaid to said Higgins at the absurdly low price of three dollars ($3) per acre, but that said contract of sale was made on the remarkable terms of only five thousand one hundred and thirty-nine $^{45}/_{100}$ dollars ($5,139.45) in cash, and the balance on a credit of twelve months. That said contract of sale to said Higgins therefore practically amounts to nothing more than the payment by said Higgins of less than five cents per acre in cash upon said lands as a consideration for an option to purchase the same in twelve months, and that this contract of sale was made at a time when lands far less advantageously situated than those so contracted to be sold to said Higgins were rising so rapidly in value in Calcasieu and Cameron parishes, as also throughout the territory supposed to be an oil territory in Southern Louisiana and Southeastern Texas, that property owners were absolutely declining to tie up their lands by granting options upon the same for periods of more than a few hours or a few days at most. That, not-withstanding the telegram so sent by your orator to said corporation, your orator was surprised and alarmed to further learn about two weeks later that on or about the 11th day of February, 1901, said corporation had contracted to sell about fifty-one thousand seven hundred (51,700) acres more of its land at the same price of three dollars ($3) per acre, and upon the same terms, to the same purchaser, the said Higgins. That in and by each of said contracts of sale it is also agreed that said Higgins may pay at any time for the lands in any particular township at the rate of three dollars ($3) per acre, and receive a warranty deed for the same, without waiting for the expiration of the time of credit above set forth, so that said agreements further allowed and empowered said Higgins to cull and select the best lands at said absurd price, leaving in the hands of the company any of said lands, if any exist, which are of value less than three dollars ($3) per acre." It is alleged that in January, 1901, a well was sunk near Beaumont, in the state of Texas, to a depth of about 1,000 feet, and struck a vein of petroleum or natural oil, and that this discovery created a great excitement, and tended to increase the value of real estate. It is alleged that the lands owned by the appellant are situated between 20 and 30 miles from Beaumont, "and a theory and belief" is asserted that oil would be found generally in the direction of these lands. The bill contains many

other averments, some of which may be referred to in the opinion. The object of the bill is to restrain any further sales of the real estate, and to · stay the sales described if they are incomplete or unexecuted, and to secure their cancellation by suit to be brought by the receiver if they are found to be executed. The bill contains a prayer for an injunction and for. the appointment of a receiver. The court below granted the'prayer of the bill, and made an order appointing a receiver of all the property of the corporation situated in the state of Louisiana; conferring on such receiver the usual powers to prosecute and defend suits, and also to carry on .the business of the corporation. The appeal is taken from this order. It is assigned here that the court erred in appointing the receiver without notice to the appellant, and that it erred in appointing a receiver because it appeared from the bill of complaint that the company was a solvent, going concern, and "that the matters complained of were such as a majority of the stockholders, acting with the officers of the company, had authority to control and determine."

Joseph Paxton Blair (Pujo & Moss and Denegre, Blair & Denegre, on the brief), for appellant.

E. B. Kruttschnitt (E. H. Farrar and B. F. Jonas, on the brief), for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is a general rule that courts of equity will not interfere in questions of corporate management or policy. They are reluctant to undertake the management of private corporations, and, in the absence of fraud, usurpation, or gross negligence and mismanagement equivalent to fraud, they generally refuse to interfere, and allow the majority of the stockholders to rule, leaving dissatisfied stockholders to redress their grievances by ordinary corporate methods. The complainant in this case is a minority stockholder. He seeks to devest the directors, representing a majority of the stockholders, of the possession and control of the corporate business and property. He has obtained an ex parte order that has that effect. No ultra vires act is alleged in the bill, and there is no averment of fraudulent conduct on the part of the directors. It is not charged that either of the directors or the agent, Eastman, is acting fraudulently or in combination with the purchasers of the land. The real cause of the litigation is the sale by the directors, through their agent, Eastman, of 154,700 acres of land. The purchase price was $3 an acre, amounting in the aggregate to $464,100. Of this the sum of $7,735 was paid in cash, and the remainder was to be paid in 12 months. It is not stated whether the deferred payment bears interest or not. It is not alleged that P. Higgins, the purchaser, is insolvent. It is alleged, indirectly and not · positively, that the real estate sold is worth "many times the price" for which it has been sold. It is not averred, however, that any one has offered or is willing to pay more for it. The bill shows that a high value is placed on the land by the complainant because of the discovery of oil 20 or 30 miles from it. It is not averred that it has any value for farming purposes or for grazing, or on account of timber or otherwise, or that it has any rental value. Unless oil

should be discovered on it, it is not apparent from the bill that it is worth more than the price at which it has been sold. Barring a general and indirect assertion of its value, no facts, are stated from which the court can determine its value, or that it is intrinsically worth more than the sum for which it has been sold. What it cost the company is not averred, and it may be that the sale is for a large profit on its cost. The company is organized to buy and sell lands. In addition to the land sold, it owns 645,300 acres in Louisiana. If it be true that these lands are worth greatly over $3 an acre, it may be the honest opinion of the directors that it is to the company's interest to sell them for that price, no better price being now offered, so that the development of the lands sold would increase the value of the lands retained by the company. This is a matter of corporate policy and management. The price at which the company will sell its lands must necessarily be fixed by the directors, officers, or agents of the company selected by the stockholders. A minority stockholder should not, on the facts here alleged, be aided by the court to control the action of the directors, and himself be allowed to fix the price. The substantial controversy between the complainant and the defendant corporation, as presented by his bill, is as to the sale of these lands. But for that sale, and the probability of other sales, the bill would not have been filed. The complainant thinks it greatly to the detriment of the company to sell the lands at $3 an acre. The directors think that the sale at that price is to the company's interest. In such controversy, in the absence of fraud and collusion, if the directors are acting within the power conferred on them by the charter, the courts cannot properly interfere. On such questions, under the circumstances presented, equity will not interfere with the legal corporate management. While the courts in a proper case will protect the rights of a minority stockholder, they cannot interfere with the right of legitimate control by the officers representing a majority of the stockholders. This is certainly the course to be pursued when, on the ex parte statement of the complainant, it does not clearly appear that the action of the majority is now or will finally prove disadvantageous. Even where the management of the majority appears to be unwise and injurious, equity will not interfere if such management be not dishonest or ultra vires, but will require the complaining stockholder to seek relief within the corporation. When the management is not shown to be fraudulent or dishonest, and when it is a matter of opinion whether it is wise or unwise, advantageous, or disadvantageous, if the acts complained of be intra vires, there is no authority for equity to interfere. To do so would be to place the control indirectly in the hands of the minority whenever interference removes from control the officers selected by the majority. There is certainly no presumption that a minority stockholder is right, and a majority stockholder is wrong, in opinion as to the values and the management of the corporate property. On general principles of equity as administered in the courts, we do not think the bill makes a case which justifies the order appointing a receiver. If facts existed which entitled the

complainant, as a minority stockholder, to relief, so far as the land sales are concerned, he has sought and obtained a remedy which goes greatly beyond the necessities of the case. A receiver is appointed not only for the lands, the subject of the controversy, but for 645,300 acres of other lands, and for the canal, pumping stations, steamboats, choses in action, and cash in bank, and all of the corporation's property in Louisiana. Equity would be greatly deficient in remedial procedure if there were no remedy less severe for the acts complained of, if they were of a character calling for the interference of an equity court. To take a defendant's property out of his possession and control after notice to him and after a hearing, in advance of a final trial, and place it in the hands of a receiver, is a jurisdiction that should be exercised with great care, and with studious effort to avoid mistake and oppression; and to deprive him of the possession of his property without notice, on the motion of his adversary, is a jurisdiction and power that should be rarely used, and never except in a clear case of imperious necessity, when the right of the complainant, on the showing made by him, is undoubted, and when such relief and protection can be given in no other way. When notice can be given, it should be given, unless there is imminent danger of loss or great damage, or irreparable injury, or the greatest emergency, or when by the giving of notice the very purpose of the appointment of a receiver would be rendered nugatory. And such instances are of rare occurrence in the federal courts, because of their power, when an injunction is asked for, to grant a temporary restraining order (Rev. St. U. S. § 718), which may be served at the same time that the notice is served, to prevent action by the defendant or his agent, and to preserve the existing conditions until the application for an injunction and for a receiver can be heard.

But it is claimed that, however this may be, as a question of general equity jurisprudence, the complainant is entitled to a receiver under the laws of Louisiana; and our attention is called to the following statute authorizing the appointment of a receiver:

"At the instance of any stockholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing or misapplying the property or funds of the corporation." Acts La. 1898, p. 312 (Act No. 159, § 2).

It is true that the federal courts will administer any enlargement of equitable remedies made by the legislatures of the states, with certain limitations, not material to this case. Pine Co. v. Hall (C. C. A.) 105 Fed. 84. Without deciding whether this statute is really an enlargement of an equitable remedy, we may briefly explain its provisions as applied to this case. It authorizes the appointment of a receiver at the suit of a stockholder when the directors or other officers of the corporation are jeopardizing the rights of the stockholders in any one of three ways: (1) By committing ultra vires acts. It does not appear that any act complained of here is ultra vires. On the contrary, the corporation is fully authorized to sell its real estate. (2) By wasting, misusing,

or misapplying the property or funds of the corporation. There are no specifications in the bill of waste, misuse, or misapplication of property or funds, within the fair meaning of the statute. (3) By grossly mismanaging the business. The bill does allege the gross mismanagement of the business, but such general averment must be read in the light of the specifications which follow. The specifications are simply the sales, which do not meet the approval of the complainant, but which are approved and sanctioned by the directors. The statute could not be intended to enable a minority stockholder to obtain a receivership, so as to enforce his view of the management and policy to be pursued, in opposition to the views of the representatives of the majority. The very terms of the statute indicate an adherence to the general equitable principles that the acts of the directors intra vires would be upheld unless they amount to gross mismanagement, waste, or misuse of the property, thereby jeopardizing the rights of the stockholders. The management and sales averred do not, we think, come within the meaning of the statute. The averments show a difference of opinion as to the policy to be pursued, and it does not clearly appear that the action of the directors in making these sales will not finally be to the real interest of the stockholders.

The laws of Louisiana permit a vendor to obtain a rescission of a contract of sale of real estate when it has been sold for less than one-half of its just value. Merrick's Rev. Civ. Code La. 1900, arts. 2589–2591. It has been held that the right to rescind a sale for lesion beyond moiety is personal to the original purchaser, and cannot be maintained against a subsequent purchaser in good faith. Snoddy v. Brashear, 3 La. Ann. 569. It is therefore urged that the receiver was properly appointed to bring suit for the rescission of these sales, and properly appointed without notice, because the purchaser, if he had notice, might convey to a third person against whom the suits could not prevail. We will not consider the question of lis pendens,—whether or not a pending suit, without a receiver, would prevent a vendee of the original purchaser acquiring any better right than his vendor. Waiving that question, the complainant is met by the same difficulty that obtains in other views of the case. Should the court, at the instance of a minority stockholder, who does not allege fraud or dishonesty or ultra vires acts on the part of the directors, require suits to be brought which the directors do not approve? Must the court assume the management and control of the sales and business of a corporation, which is managed without dishonesty or fraud, so as to enforce the views of a complaining stockholder in the rescission of sales approved by the majority? These statutes put no new question in the case. The question remains whether the averments of the bill make a case for the interference with the control of the directors. It does not certainly appear that such suits for rescission would, if successful, inure to the benefit of the stockholders. No one has offered more for the land than it was sold for. It is not averred to have a greater intrinsic value, as for farming, timber, grazing, or otherwise. It appears from the bill that, if it has a greater value,

it is speculative, dependent on discoveries of oil in the land, which may or not be made. In the case of judicial sales it was not the practice to open the bidding on the mere sworn assertion that the land had not sold for enough. The court required facts to show that at a subsequent sale it would bring a larger sum. It was the frequent practice, therefore, for the party seeking to open the biddings to make an increased offer, and to make a deposit in court to show his good faith. 2 Daniell, Ch. Pl. & Prac. (4th Ed.) 1285. Such practice would, of course, not prevail in this case, but it shows that it was the experience of equity courts that sales should not be set aside merely because some party to the proceeding asserted the land had been sacrificed. The practice shows a variance of opinion as to values may be expected, and the courts could not safely vacate land sales on account of such differences of opinion. In this case we have before us no statement that others stand ready to give more for the land, nor have we any statement of fact showing that it is intrinsically worth more than the purchase price. As a court of equity would not, on such facts, so far as they relate to the purchase price, refuse to confirm a judicial sale, should the court, in opposition to the wishes of the directors representing the vendor, appoint a receiver to institute suits to rescind? If it be conceded that the court by an interlocutory order can vest the right to bring such suit in a receiver of a solvent corporation,—a question not raised in argument,—we think the facts averred do not authorize such appointment. Our conclusion is that the bill contains no sufficient averments for dispensing with notice to the appellant of the application to appoint a receiver. High, Rec. (3d. Ed.) §§ 111, 112; Smith, Rec. § 5; State v. District Court of Silver Bow Co. (Mont.) 50 Pac. 852, 854; Gluck & B. Rec. § 16. We also decide that the decree appointing a receiver of all of the appellant's property in Louisiana was not proper, on the averments of the bill. 4 Thomp. Corp. § 4487; Smith, Rec. § 5; Coal Co. v. Hooper, 105 Ala. 665, 17 South. 118; Edison v. Phonograph Co., 52 N. J. Eq. 620, 29 Atl. 195; United Electric Securities Co. v. Louisiana Electric Light Co. (C. C.) 68 Fed. 673, 676.

The order appointing a receiver and the restraining order herein are reversed and annulled, and the receiver appointed is discharged, and he shall forthwith turn over and deliver to the appellant, the North American Land & Timber Company, its authorized officers and agents, all property of every kind, including moneys, that may have come into his hands as said receiver; and this cause is remanded, with instructions to pass upon the receiver's accounts and compensation; all costs and the expenses of the receivership to be paid by the complainant. Reversed.