The decision and order of the Board of Tax Appeals are confirmed.

### ARKANSAS–MISSOURI POWER CO. v. KUNDERER et al.

No. 9889.

Circuit Court of Appeals, Eighth Circuit.

Oct. 10, 1934.

Guy M. Peters, of Chicago, Ill. (Harry P. Daily, of Ft. Smith, Ark., A. Z. Patterson, of Kansas City, Mo., and H. L. Ponder, of Walnut Ridge, Ark., on the brief), for appellant.

R. L. Ward, of Caruthersville, Mo. (J. K. Riffel and Everett Reeves, of Caruthersville, Mo., on the brief), for appellees.

Before STONE and WOODROUGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The Arkansas-Missouri Power Company, appellant here, is a public utility corporation engaged in manufacturing and selling in Northeast Arkansas and Southeast Missouri electric lighting, electric power, and ice. All of the common stock of the appellant, except directors' qualifying shares, is owned by the Inland Power & Light Corporation. The common stock of that corporation in turn is owned by the Commonwealth Light & Power Company. The common stock of the Commonwealth Light & Power Company is owned by Middle West Utilities Company. Each of the three last-named corporations is now and at the time of the institution of this proceeding was in receivership; receivers having been appointed for them by the District Court of the United States for the Northern District of Illinois. This proceeding, seeking the appointment of receivers for the appellant, was initiated by four holders of preferred stock of the appellant, who filed their bill of complaint in the District Court September 19, 1933.

In the bill as filed there is much of surplusage and vague generalization. A fair epitome of the facts alleged, upon the basis of which the relief prayed for is asked, is as follows: (1) That the plaintiffs are owners of 266 shares of 7 per cent. preferred stock of appellant, of which 12,859 shares are outstanding; (2) that no dividends on preferred stock have been paid since May 1, 1932; (3) that the appellant is not now in a position to meet notes, accounts payable, and taxes as they fall due; (4) that current liabilities of

appellant exceed its current assets; (5) that there is danger of municipal fights and creditors' suits against appellant unless a receiver is appointed; (6) that the affairs of appellant have been mismanaged by its officers in that (a) funds have been diverted from appellant; (b) properties of appellant have not been properly maintained; (c) large amounts have been paid for management fees without corresponding returns; (d) the common stock of the East Missouri Power Company, a subsidiary of appellant, is about to be surrendered to the Inland Power & Light Company, of which appellant is a subsidiary, as security for the payment of a demand note for $384,000 from appellant to that company. The prayer of the bill is: (1) That a receiver or receivers be appointed with the usual powers necessary to a carrying on of the business of appellant; (2) that the court adjudicate the rights, liens, equities, and claims of creditors; (3) that all suits by creditors and others be enjoined; (4) that appellant, its officers, and employees be enjoined from interference with the business or property of appellant; (5) that the business and property of appellant be liquidated and the proceeds distributed.

On September 27, 1933, an answer was filed by appellant expressly denying all alleged acts of mismanagement and praying dismissal of the bill. By intervening petitions owners of 1,345 shares of preferred stock joined in asking a receivership and owners of 8,878 shares joined in opposition thereto.

On the bill and answer and the intervening petitions and on evidence submitted by the parties the District Court on November 13, 1933, made an interlocutory order appointing receivers for appellant. The present appeal is from that order.

■ It is to be regretted that we do not have the benefit of an opinion by the District Court nor of findings of fact made by that court which would aid us in understanding why the order appealed from was made. Even if Equity Rule 70½ (28 USCA § 723) does not apply where an interlocutory decree only, as distinguished from a final decree, is made, the better practice is for the District Court to make some statement as to the facts and law constituting the grounds of the decision. Public Service Commission v. Telephone Company, 289 U. S. 67, 53 S. Ct. 514, 77 L. Ed. 1036. In the absence of such a statement, this court is required, as it ought not to be, to search the record to find the basis for the decree.

Before setting out the results of our study of the record, we consider what principles and rules of law determine whether a stockholder or stockholders of a corporation may have such relief against the corporation as is prayed in the bill in this case.

■ It may be said at once that the authorities almost are unanimous in holding that "mere dissatisfaction (on the part of stockholders) with the corporate management, at least so long as the officers and stockholders do no act that is fraudulent, illegal or ultra vires, will not warrant the intervention of a court of chancery by the appointment of a receiver, because, in the absence of fraud, illegality or ultra vires conduct, the will of the majority is entitled to control the policy and the business of the body corporate." 14a C. J. 950; Brictson Mfg. Co. v. Close (C. C. A. 8) 280 F. 297; Republican Mountain Silver Mines v. Brown (C. C. A. 8) 58 F. 644, 24 L. R. A. 776; Gila Water Co. v. Witbeck (C. C. A. 9) 29 F.(2d) 175; North American Land & Timber Co. v. Watkins (C. C. A. 8) 109 F. 101; Pearce v. Sutherland (C. C. A. 9) 164 F. 609. No case can be found in which it has been ruled that some error in management merely will support a decree of receivership. The mismanagement must be fraudulent as against stockholders and creditors, and destructive of the business so as to imperil the rights of stockholders and creditors before a court of chancery will enforce so drastic a remedy as the taking over of a business from its own management. Carson v. Allegany Window Glass Co. (C. C.) 189 F. 791.[1]

---

[1] In support of their contention that receivers properly were appointed in this case, appellees have cited Tower Hill Connellsville Coke Co. v. Piedmont Coal Co. (C. C. A.) 33 F.(2d) 703; Tower Hill Connellsville Coke Co. v. Piedmont Coal Co. (C. C. A.) 64 F.(2d) 817, 91 A. L. R. 648; Ames v. Goldfield Merger Mines Co. (D. C.) 227 F. 292; Columbia Nat. Sand D. Co. v. Washed Bar Sand D. Co. (C. C.) 136 F. 710; Towle v. American Bldg. Loan & Inv. Soc. (C. C.) 60 F. 131; Sellman v. German Union Fire Ins. Co. (C. C.) 184 F. 977; Carson v. Allegany Window Glass Co. (C. C.) 189 F. 791. Each of these cases has been considered by us. None of them supports any departure from the principles and rules of law generally followed in suits by stockholders. The cases of Tower Hill Connellsville Coke Co. v. Piedmont Coal Co. (C. C. A. 4) 33 F. (2d) 703, and Id. (C. C. A.) 64 F.(2d) 817, 91 A. L. R. 648, announce and follow the rule that preferred stockholders in a cor-

214

With these principles and rules in mind, we can find no justification in the record for the decree under review.

The bill does not even allege fraud or dishonesty on the part of the management of the appellant, and there was no proof of either. It does not allege and there was no proof of insolvency, or that insolvency would result from any of the alleged acts of mismanagement. Of the acts of mismanagement alleged, there was no proof whatever of the first, namely, improper diversion of corporate funds. As to the second act of alleged mismanagement, that insufficient expenditures had been made for proper maintenance of the corporation's properties, the proof showed that less has been so expended than in the past; but there was no proof that all is not being done to maintain the properties possible to be done in view of the falling off of income resulting from the national depression. The third act of alleged mismanagement charged in the bill, that large amounts have been paid for management fees without corresponding returns, was not proved. It was proved that appellant has a contract with another associated company whereby it paid for various services, called managerial services, three-fourths of one per centum of its gross income. The amount so paid approximates $7,500 annually. But it cannot be said from the record that the appellant has not had full value for this expenditure. There was no proof whatever of the fourth and last act of alleged mismanagement, that the appellant's officers are about to surrender to its holding company the stock of a subsidiary owned by it. In brief, the record does not clearly show any mismanagement, and certainly it falls far short of showing any such fraudulent, dishonest, and destructive mismanagement as would support the interlocutory decree.

The decree of the District Court should be, and it is, reversed.

poration may have a receivership on a showing of such mismanagement by the officers as constitutes a fraud upon the rights of such preferred stockholders. In Ames v. Goldfield Merger Mines Co. (D. C.) 227 F. 292, it was ruled that a receiver should be appointed for a corporation on the suit of stockholders upon a showing of a virtual abandonment of it and its interests by its officers and directors. Columbia Nat. Sand Dredging Co. v. Washed Bar Sand Dredging Co. et al. (C. C.) 136 F. 710, rules only that minority stockholders in a corporation may ask and have a receivership upon such a showing of grave necessity therefor as the fraudulent diversion by majority stockholders of corporate funds and income to themselves. In Towle v. American Bldg., Loan & Inv. Soc. (C. C.) 60 F. 131, it was ruled that a showing that intentional and dishonest mismanagement, involving the looting by the officers of the treasury of a corporation and resulting in insolvency, would support the appointment of a receiver in a stockholder's suit. In Sellman et al. v. German Union Fire Ins. Co. (C. C.) 184 F. 977, 978, it was ruled that a receiver for a corporation should not be appointed in a stockholder's suit unless there is a clear and convincing showing that its affairs have been so fraudulently mismanaged by its officers and directors as "to produce a conviction that further control of the corporation by its board would result in the destruction of its business or create a great and unnecessary loss to its creditors and stockholders." Carson v. Allegany Window Glass Company et al. (C. C.) 189 F. 791, decided by the same court as Sellman et al. v. German Union Fire Ins. Co., supra, merely restates the principle announced in that case.