GRAHAM-NEWMAN CORPORATION, a New York Corporation, SEYMOUR COHN and HARRY EVERETT BELL,

*vs.*

FRANKLIN COUNTY DISTILLING COMPANY, INCORPORATED, a corporation of the State of Delaware.

*New Castle, July 10, 1942.*

*Henry R. Isaacs,* and *George M. Jaffin* and *Frank L. Miller,* both of New York City, for complainants.

*Southerland, Berl & Potter,* and *N. Henry Josephs* and *Donald O. Lincoln,* both of New York City, for respondent.*

THE VICE-CHANCELLOR: The questions are whether the respondent, a Delaware corporation, should be enjoined from resuming its business, and a master appointed to hold a meeting of shareholders to consider the advisability of liquidation and dissolution of the company; and whether the corporation should be enjoined from attempting to purchase its outstanding convertible preferred stock at the price of $8.50 per share. The sufficiency of the bill is challenged by demurrer.

The complainant Seymour Cohn is the record owner, and the complainant Graham-Newman Corporation is the beneficial owner of 4,303 shares of convertible preferred stock of respondent. The complainant Harry Everett Bell owns 20 shares of this stock.

Respondent was incorporated in 1933. Its certificate of incorporation authorizes the issuance of two classes of

*Honorable Paul Leahy originally appeared for respondent and participated in the argument; but before complainants' reply brief was filed, March 24, 1942, he withdrew as solicitor upon his appointment as Judge of the United States District Court for the District of Delaware.

stock: convertible preferred and common. Holders of the convertible preferred stock are entitled, as preferences over the common stock, to dividends of 60 cents a share per annum; and upon dissolution, to $11 a share, in the case of voluntary, and $10 a share in the case of involuntary liquidation, together with accumulated dividends. It is redeemable at the option of the corporation at $11 a share. Voting rights are reposed in the common stock; except that when dividends on the preferred are in arrears in an amount equal to or greater than the dividends for one year, the preferred stockholders may vote, and may elect a majority of the board of directors, until all accumulated dividends are paid.

The primary object and purpose of the corporation is alleged in the bill as follows:

"To distill, redistill, rectify, compound, blend, manufacture, produce, buy, import, prepare for market, warehouse, hold, use, trade in, sell, pledge, export, distribute and otherwise deal in for itself and others, whiskeys, high wines, gins, liquors, beverages, and alcohol of all kinds and grains, molasses, sugars, and generally all articles used in connection with the operation of a distillery and any products thereof and any other goods, wares, merchandise and other property of every kind and description."

The company engaged in the business of distilling liquor at a plant which it owned in Franklin County, Kentucky. Its aggregate net income for the years 1935 to 1938, inclusive, was $481,555.85. During 1939 and the first five months of 1940 it sustained a total net loss of $85,574.31. It had not distilled whiskey since February, 1939, and did not have sufficient cash to resume distilling operations. It was confronted with litigation involving its federal tax liability, as well as the right to use its then corporate name (which has since been changed). In the summer of 1940, the directors and stockholders voted to sell most of the assets, including the distillery, warehouses, machinery, equipment, and certain liquors and trade-marks. After the consum-

mation of the sale and after providing for the payment of indebtedness, the corporation had cash, receivables, and whiskey of an aggregate value of $1,126,121.25. If the corporation had then been liquidated, there would have been distributable to the holders of 44,775 shares of outstanding preferred stock, the sum of $492,525.; and to the holders of 360,450 shares of outstanding common stock, the sum of $633,596.25.

The directors did not take steps looking toward a liquidation or dissolution. Their attitude as to the future of the corporation was expressed in a letter written by the treasurer as follows:

"At a meeting of the Board of Directors on September 17th, 1940, it was determined that the stockholders' interests would best be served through the continuation of the company, and to that end efforts are being made to complete distilling, warehousing, and bottling arrangements."

Subsequent to the sale, the corporation purchased a considerable number of shares of its outstanding preferred stock at $8.50 a share, and has continued in an effort to acquire shares at that price.

Complainants allege that the affairs of the corporation have become confused and chaotic, and its management divided by dissension. This, they say, is apparent from the facts that the president and general manager has resigned, another director has sued the corporation, and still another has rendered bills for legal services, the amounts of which are in dispute.

The manifest purpose of this suit is to compel a distribution of the corporate assets among the shareholders. The prayers that the resumption of business be enjoined and that a master be appointed to hold a stockholders' meeting to consider the advisability of liquidation or dissolution are premised upon the contention that the corporation should be dissolved. To establish this, complainants urge that respondent has failed in the object for which it was formed;

that this is evidenced by the fact that the corporation sold its plant and equipment under conditions which made it practically imperative so to do.

I am wholly unable to find that the corporation has failed in the object for which it was formed, or that any circumstances alleged render it impossible for the corporation to carry out its object and purpose. The unsatisfactory result of an initial undertaking or operation does not necessarily mean that a corporation has failed in its primary purpose. From the mere fact that this corporation sold its distilling plant and equipment under conditions which made the sale imperative, it does not follow that it would be unreasonable for it ever to acquire another plant and other equipment. Nor would a cessation of actual distilling operations for a reasonable period after the sale, and while determining whether to embark upon another enterprise within the scope of its objects and purposes, indicate abandonment or non-user of its franchises, or justify complainants' characterization of the corporation as a "non-going" concern. Before the stockholders' meeting at which the sale of the plant was authorized, the possibility of again undertaking active operations was plainly contemplated by the directors. The stockholders were apprised of this, for in the proxy statement sent to them prior to the meeting, the directors stated, among other things:

"The corporation, after the consummation of the sale, and pending the determination by its Board of Directors as to whether the corporation shall be dissolved, will limit its future activities to one or more of the following: * * * provided, however, that the corporation shall not purchase the fixed assets of, or the good will and going business of, any person, firm or corporation, or acquire any share of capital stock of any other corporation, or acquire any share of the corporation's outstanding common stock, without first obtaining the approval of a majority of the holders of each class of the corporation's outstanding capital stock."

But complainants say it is unreasonable to believe that the stockholders would approve of the resumption of the

distilling business; that "present management conditions, confused, disordered and chaotic, not alone justify such conclusion, but the very fact that this corporation has heretofore failed in the distilling business." It appears that the corporation has had problems and difficulties. However, it does not appear that because of alleged chaos and dissension, the directors have not functioned as such, or that the corporation or its stockholders have been injured, or that any animosity exists between the stockholders and the management. Again, it is by no means certain that the "failure" of the corporation in the distilling business was of such character as to make it unreasonable to expect that the stockholders would approve any resumption of operations. The income record as alleged in the bill does not show utter failure. Dividends on preferred stock are not in arrears. There is admittedly ample property to pay the liquidation value of the preferred stock and then leave an even greater sum for distribution among the common stockholders.

To conclude that the stockholders would not approve of any new undertaking, they not having expressed themselves, could be warranted only in the clearest case where the facts and circumstances necessarily required that conclusion. This is not such a case. Moreover, no reason has been suggested and none appears why this court should interfere in the affairs of the corporation so far as to require the stockholders to express their wishes.

The procedure for voluntary dissolution of a corporation is provided by *Section* 39 *of the Delaware Corporation Laws*, 43 *Laws of Del.* (1941) *Chap.* 132, *Sec.* 8, *p.* 454. The statute does not afford relief to complainants in the present situation. Authorities cited for the proposition that a court of equity may, independently of a statute, decree the dissolution of a corporation which has failed in the object for which it was formed, are inapposite. Nor is this a case in which action of the majority of the shareholders "amounts to a wanton or fraudulent destruction of the rights of the

minority"; or where unless dissolved, "it is but a question of time when the annual charges and expense will absorb the entire assets of the company, and that there is no reasonable probability of an increase of the assets or of the income in excess of the current expenses" as in *Fisher v. Bankers' Fire & Marine Ins. Co.*, 229 *Ala.* 173, 155 *So.* 538, 541. It must be concluded that complainants have not stated a case entitling them to relief by way of compelling a dissolution, or other relief which is based upon a finding that the corporation should be dissolved.

Hence, it becomes apparent what must be the answer to the remaining question: whether the corporation should be enjoined from attempting to acquire its outstanding convertible preferred stock at the price of $8.50 a share. Complainants are under no compulsion to sell their shares. However, they say that the purchases are "motivated solely by the desire of the officers in control and receiving salaries as such, to continue to carry on the corporation and thus to hold on to their offices and the salaries therefrom which otherwise would and should be discontinued." This seems somewhat inconsistent with the allegations that the directors are undertaking "to resume the very business in which they have heretofore failed, and thereby defeat or indefinitely delay the liquidation and dissolution of the company." I do not understand complainants to deny the power of a corporation to purchase shares of its capital stock, acting under the authority of *Sections* 19 *or* 27 *of the Delaware Corporation Law, Rev. Code of Del.* 1935, *Secs.* 2051, 2059; nor to contend that a corporation may never purchase shares of its redeemable stock at less than the redemption price. Their position is that respondent corporation should be dissolved, that the corporate assets are more than sufficient to pay the full redemption or liquidation value of the preferred stock, and that it would, therefore, be inequitable for the corporation to purchase this stock at a price less than such value. Since it has not been shown that the corporation

should be dissolved, this contention need not be considered further.

Other relief prayed for is incidental to the main relief which, for the reasons above discussed, is not warranted by the allegations of the bill.

An order sustaining the demurrer will be advised.