## LEWIS v. COMMONWEALTH SECURITIES, Inc.

No. 308.

District Court, D. Delaware.

July 30, 1943.

C. Edward Duffy (of Logan & Duffy), of Wilmington, Del., and Unger & Pollack, of New York City, for plaintiff.

Clarence A. Southerland (of Southerland, Berl & Potter), of Wilmington, Del., and Berkley W. Henderson (of Jones, Day, Cockley & Reavis), of Cleveland, Ohio, for defendant.

LEAHY, District Judge.

This is an action by a preferred shareholder of Commonwealth Securities, Incorporated, a Delaware corporation (herein referred to as "Commonwealth"). Because of circumstances which I shall detail subsequently, plaintiff seeks a receiver to wind up and liquidate Commonwealth.

Commonwealth is engaged in what is currently known as the general investment business. 67,571 shares of 6% $100 par preferred are outstanding, with an unpaid accumulated dividend charge of $65.75 a share, or a total of $4,442,793.25 dividend arrearages. All of the 318,428 shares of $1 par common are outstanding, and they enjoy exclusive voting rights, except that by virtue of dividend arrearages voting rights, having devolved on the preferred, both classes are now entitled to vote. Preferred has a present market of $20 a share. Present liquidating value of assets attributable to preferred is approximately $30 a share. Common has a market of about 10¢ a share and on the present value of portfolio assets it is deeply under water.

Defendant moved to dismiss the complaint under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, because the complaint offered no basis for invoking the extraordinary power of a court of equity to appoint a receiver to wind up and liquidate.

In substance, the complaint alleges the business of Commonwealth has so lessened that since 1938 there has been a drastic decline in the purchase and sale of securities. In fact, it charges defendant has no methodical plan of portfolio turnover; and its transactions are so sporadic that there has been practically no such turnover from August, 1941, to April, 1942. Moreover, it is alleged that defendant's ratio of operating and management expenses to investments has increased from 20.51% for the period ending December 31, 1941, to 28% for the year ending December 31, 1942.[1] It is also alleged that defendant's cash on deposit is disproportionate to the market value of its securities owned, in the light of its cash requirements for operating expenses. Plaintiff insists that defendant retains no investment counsel, but relies upon the judgment of its officers and directors; that since December 31, 1938, the market value of its securities declined from $2,500,262 to their present value of $1,-431,782—a shrinkage in market value of approximately 40%—while during the same period general price levels of securities have risen at least 25%; and finally, that as the officers and directors of defendant have purchased and retired certain preferred shares, a partial liquidation has occurred.

The remaining allegations of the complaint deal with the market activities of certain owners of common stock—wholly unrelated to any acts of the management—and an averment that the public interest

---

[1] Plaintiff, here, charges that the ratio of expenses to investment income should not exceed 5%. In passing, I remember that in Securities and Exchange Commission v. Fiscal Fund, Inc., D.C., 48 F.Supp. 712, the Commission's expert, Harry Heller, Esq., testified: "I want to point out that the norm in investment companies is about 20%—a ratio of expenses to net income of about 20%."

demands that, as the common shares are without present asset value, there be a judicial declaration that the common stock is worthless. These particular allegations are so obviously remote from the real issue in the instant suit that I shall make no further comment on them.

The precise question here is whether a court of equity should wind up and liquidate an investment trust business through receivership, absent fraud or mismanagement, simply on the ground of a preferred shareholder's dissatisfaction with the manner or results of corporate management. Put so bluntly, the answer is obvious.

■ The power of a court of equity to appoint a receiver to liquidate corporate assets where there is neither insolvency nor threat of such, and where no direct charge is made of mismanagement or total lack of management or fraud on the part of officers and directors, is unknown to our law. The remedy of receivership was discussed in Myers v. Occidental Oil Corporation, D. C. Del., 288 F. 997, 1001. The court there said: "Apart from statute, the appointment of a receiver is merely a remedy incidental and ancillary to the primary object of litigation, and cannot itself constitute such primary object." Or, as said in Price v. Bankers' Trust Co., Mo. Sup., 178 S.W. 745, 749: "It is fundamental that there is neither in law nor in equity any such thing as a plain receivership action, i. e., an action in which a receiver is the only desideratum." See, too, Enterprise Printing & Publishing Co. v. Craig, 195 Ind. 302, 144 N.E. 542, 145 N.E. 309; State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S.W.2d 806; Central West Public Service Co. v. Craig, 8 Cir., 70 F.2d 427; and Skinner v. Educational Pictures Securities Corp., 14 Del.Ch. 417, 129 A. 857. Here, the only relief prayed for is the appointment of a receiver to "completely liquidate and disburse the remaining assets of defendant to those who shall be found to be entitled thereto." There is no ultimate object other than the appointment of a receiver. In this respect the complaint fails to set forth a cause of action. As stated, a court has no power to wind up and dissolve a corporation absent fraud on the part of its officers and directors, or failure of primary corporate purpose. Myers v. Occidental Oil Corporation, supra; Graham-Newman Corp. v. Franklin County Distilling Co., Inc., Del.Ch., 27 A.2d 142, 144; Fletcher, Cyc. Corporations, § 8080.

■ The only allegation of fraud which I have been able to detect in the complaint is the charge of fraud or illegal conduct on the part of defendant's officers and directors with respect to the retirement of the preferred stock. The allegation (par. 20 of the complaint) recites: "that said purchases have been made at prices substantially below the liquidating value of said preferred stock and thus constitutes a fraud and unwarranted loss to the holders of said preferred stock * * *." In the first place, there is nothing before me which indicates that the sales by such individual preferred stockholders was not done willingly, or, with coercion; second, none of the so-called victims has complained; and, third, I fail to see how plaintiff can charge management with a fraudulent act with respect to such persons without a showing of privity between plaintiff and one of the preferred shareholders who has disposed of his shares to Commonwealth for retirement. Moreover, in this connection, in Graham-Newman Corp. v. Franklin County Distilling Co., Inc., supra, where a party was seeking the same relief as is sought here, Vice-Chancellor Pearson disposed of this point by saying: "I do not understand complainants to deny the power of a corporation to purchase shares of its capital stock, acting under the authority of Sections 19 or 27 of the Delaware Corporation Law, Rev.Code of Del. 1935, Secs. 2051, 2059; nor to contend that a corporation may never purchase shares of its redeemable stock at less than the redemption price." If plaintiff here bases his right of action on the type of fraud alleged in paragraph 20, I have little hesitation in saying he is out of court.

■ The actual complaint of the plaintiff in the case at bar is mere dissatisfaction with the manner and results of corporate management. Defendant is a solvent going concern. But it simply does not turn its portfolio over enough times to suit plaintiff. As a result, plaintiff thinks operations should be increased in order to make more profits, and a greater portion of the cash should be translated into securities. Assuming that the ratio of operating expenses to income is above average and the common stockholders refuse to relinquish their voting power (and I would be greatly surprised by such altruism if they did), these are not cogent reasons for court intervention. Courts do not appoint receivers because of some error in corporate manage-

ment. Hornstein[2] has said: "All courts agree that, in the absence of bad faith on the part of the management or majority stockholder, a minority stockholder cannot have a corporation wound up merely because he thinks it undesirable for the corporation to continue in business, or because he is dissatisfied with the manner in which it is being conducted." Arkansas-Missouri Power Co. v. Kunderer, 8 Cir., 73 F.2d 212, and Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S.W. 248, share the same view that the drastic remedy of deposing management under such circumstances should not be available in a court of equity. I agree.

Plaintiff's main reliance rests on Securities and Exchange Commission v. Fiscal Fund, Inc., D. C. Del., 48 F.Supp. 712. There, I had manifold violations of the Investment Company Act of 1940, 15 U.S. C.A. § 80 a—1 et seq.; an abandoned corporation without officers and directors; and a complete and irremediable failure of corporate purpose. The complaint as drawn here does not come within the scope of that decision. The remaining cases relied on by plaintiff involve either irremediable failure of corporate purpose, fraudulent conduct on the part of management, or a paralysis of corporate function due to deadlock. None of these factors is alleged in the complaint.

If an order is submitted, it may provide that the complaint shall be dismissed.

---

[2] "A Remedy for Corporate Abuse", 40 Col.L.Rev. 221, 235.