## MACON GROCERY COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 351.  Argued October 20, 21, 1909.—Decided January 17, 1910.

A suit brought by shippers to enjoin a railroad company from putting a tariff schedule into effect on the ground that it violates rights secured by the act to regulate commerce is a case arising under the Constitution and laws of the United States, and the jurisdiction of the Circuit Court over the person of the defendant must be determined accordingly.

Under the jurisdictional act of March 3, 1875, c. 137, 18 Stat. 470, as amended by the act of March 3, 1887, c. 373, 24 Stat. 552, corrected by the act of August 13, 1888, c. 866, 25 Stat. 433, the Circuit Court in the district of which the defendant is not an inhabitant has not jurisdiction of a case arising under the Constitution and laws of the United States, even though diverse citizenship exist, the plaintiff resides in the district, and the cause be one alone cognizable in a Federal court.

Where pleas to the jurisdiction which should have been sustained on one ground were overruled but subsequently the Circuit Court of Appeals reversed and remanded with instructions to dismiss without prejudice for want of jurisdiction on a different ground, this court may reach the result which should have been originally arrived at by affirming the decree of the Circuit Court of Appeals without expressing any opinion as to the merits of the reasoning on which it was based.

166 Fed. Rep. 206, affirmed.

THE facts, which involve the jurisdiction of the Circuit Court, are stated in the opinion.

*Mr. William A. Wimbish* for appellants.

*Mr. Henry L. Stone* and *Mr. Claudian B. Northrop* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

This litigation was commenced on the equity side of the Circuit Court of the United States for the Southern District of Georgia, by the filing on July 25, 1908, of a bill on behalf of the present appellants, all citizens of the State of Georgia, who are wholesale dealers in groceries and food products and like commodities. The defendants named in the bill are the appellees in this court, railroad corporations of States other than Georgia, viz., the Atlantic Coast Line Railroad Company, the Louisville and Nashville Railroad Company, the Nashville, Chattanooga and St. Louis Railway Company, the Southern Railway Company, and the Cincinnati, New Orleans and Texas Pacific Railway Company.

Briefly stated, the object of the bill was to restrain the putting into effect, by the interstate carriers just named, of proposed advances in rates on fresh meats, grain products, hay and packing-house products within the territory of what is known as the Southeastern Freight Association. That territory, roughly described, embraces the States of South Carolina, Florida, Georgia, points in Tennessee, and that portion of Alabama east of a line drawn from Chattanooga through Birmingham, Selma and Montgomery to Pensacola. It was averred that freight tariffs, embodying the proposed advances in rates, had been filed with the Interstate Commerce Commission, that notice had been given that such tariffs would become effective on August 1, 1908, and that practically every interested line of railroad within the territory in question had joined in such tariffs as participating carriers. The advance in rates was averred to be an "arbitrary and unlawful exaction," and to be the direct outcome of understandings and agreements in suppression of competition and in unlawful combination in restraint of interstate trade, arrived at and made effective through the agency of the Southeastern Freight Association and other affiliated associations, and that the acts of such combinations in mak-

ing the advance of rates complained of was the result of a conspiracy, unlawful as well at common law as under the statutes of the United States. Averring that to permit the going into effect of the proposed unjust and unreasonable rates would entail irreparable loss and injury to complainants and others similarly situated, would operate to the prejudice of the public interest, and would bring about a multiplicity of suits for reparation, the bill prayed the allowance of an injunction *pendente lite*, restraining the putting into effect of the proposed advances, and that upon a final hearing a decree might be awarded perpetually enjoining such advances.

Specially appearing for the purpose, the various defendants respectively filed a plea to the jurisdiction, each defendant asserting in substance an exemption from being sued in a district of which it was not an inhabitant. Demurrers to the pleas to the jurisdiction were sustained. Thereupon, without waiving the benefit of the pleas, defendants jointly demurred to the bill upon numerous grounds. Without specifically passing on the demurrer, the court heard the application for an injunction, upon affidavits and documents submitted on behalf of the complainants, and on August 1, 1908, announced its opinion "sustaining the contention of the complainants and directing the injunction prayed to issue upon the condition that complainants should within ten days present their complaint to the Interstate Commerce Commission for investigation and determination of the reasonableness of the rates involved." *Macon Grocery Co.* v. *Atlantic C. L. R. Co.*, 163 Fed. Rep. 738. Two days afterwards an order was entered, in which, among other statements, it was recited— "that the complainants, together with other persons in the cities of Atlanta, Columbus, Rome and Athens, Georgia, have this day filed with the Interstate Commerce Commission their complaint, praying the commission to investigate and determine the reasonableness of the rates involved, also to declare what are just and reasonable maximum rates."

The order decreed that the defendants to the action and
each of them—"be and they are hereby jointly and severally
enjoined from enforcing collection of the advance in rates
made effective August 1st, 1908, from Ohio and Mississippi
River crossings, Nashville, Tennessee, and points with rela-
tion thereto, to all points within the State of Georgia, on
Classes B, C, D and F, fresh meats, C, L, grain products, hay
and packing-house products; this injunction to continue and
remain in force pending an investigation and determination
of the reasonableness of the rates involved, by the Interstate
Commerce Commission, or until further order of the court."

Thereupon an appeal was taken to the Circuit Court of
Appeals for the Fifth Circuit. It was there held that the case
presented "for necessary consideration the proper construc-
tion of the act to regulate commerce," and that the jurisdic-
tion of the court did not rest solely upon diversity of citi-
zenship of the parties. The court, being of opinion "that the
sound construction of the different provisions of the act to
regulate commerce as amended and now in force, necessarily
forbid the exercise of the jurisdiction attempted to be in-
voked by the bill," reversed the decree of the Circuit Court
and remanded the case to that court with instructions to
dismiss the bill without prejudice.

Assignments of error, eighteen in number, have been filed,
wherein, in various forms of statements, appellants assail
the action of the Circuit Court of Appeals in adjudging that
the Circuit Court was without jurisdiction over the subject-
matter of the bill. The appellees also, in the argument at
bar, press upon our notice, as they did below, the claims
made in the special pleas to the jurisdiction filed in the Cir-
cuit Court. It is of course the duty of this court to see to it
that the jurisdiction of the Circuit Court was not exceeded,
(*Louisville & Nashville R. R. Co.* v. *Mottley,* 211 U. S. 149,
152, and cases cited), and we shall dispose of the case before
us by considering and deciding the last-mentioned conten-
tion. The basis of the claim that the Circuit Court had not

acquired jurisdiction over the person of the defendants was that none of the defendants was an inhabitant of the district in which the suit was brought, and that the suit being one "wherein the jurisdiction is not founded only on the fact that the action is between citizens of different States, but is based also upon acts of Congress of the United States relating to interstate commerce and alleged causes of action arising thereunder," the defendant could not be sued outside of the district of which it was an inhabitant. As cause of demurrer to the pleas the complainants stated "that the controversy presented by the bill is wholly between citizens of different States, and is solely founded upon diversity of citizenship." While sustaining the demurrer the Circuit Court yet declared:

"It is true that in this case the illegality of the alleged increase in rates must necessarily, in large measure, be determined by the Federal law. The legality or illegality of the alleged combination in restraint of trade must be determined by the same law, and it seems to be conceded that, generally speaking, this court would not have jurisdiction of these questions finally except under conditions which do not exist here. That is to say, the court can only, for final determination, entertain the Federal question in the district of which the defendants are inhabitants."

Despite these views, however, as the court considered, if the averments of the bill were taken as true, there was "a threatened and immediate violation of the Federal law of the gravest character to a large number of people," irreparable injury would be occasioned if the increase in rates was allowed to go into effect, and as there was not time for those affected to have protection or seek recourse elsewhere, jurisdiction was entertained for the purpose of giving temporary relief.

The pertinent section of the statute regulating the original jurisdiction of Circuit Courts of the United States is the first section of the act of March 3, 1875, 18 Stat. 470, ch. 137, as

amended by the act of March 3, 1887, 24 Stat. 552, ch. 373, as corrected by the act of August 13, 1888, ch. 866, 25 Stat. 433, reading as follows:

"That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or. in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, ·and arising under the Constitution or laws of the United States, . . . or in which there shall be a controversy between citizens of different States, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid. . . . But . . . no civil suit shall· be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

In *Patton* v. *Brady*, 184 U. S. 608, 611, discussing the question as to when a case may be said to arise under the Constitution of the United States, the court observed:

"It was said by Chief Justice Marshall that 'a case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States whenever its correct decision depends on the construction of either,' *Cohens* v. *Virginia*, 6 Wheat. 264, 379; and again, when 'the title or right. set up by the party may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction.' *Osborne* v. *Bank of United States*, 9 Wheat. 738, 822. See also *Gold-Washing & Water Co.* v. *Keyes*, 96 U. S. 199, 201; *Tennessee* v. *Davis*, 100 U. S. 257; *White* v. *Greenhow*, 114 U. S. 307; *Railroad Company* v. *Mississippi*, 102 U. S. 135, 139."

In *Tennessee* v. *Davis*, 100 U. S. 257, the court said:

"What constitutes a case thus arising was early defined in the case cited from 6 Wheaton (*Cohens* v. *Virginia*). It is not merely one where a party comes into court to demand something conferred upon him by the Constitution or by a law or treaty. A case consists of the right of one party as well as the other, and may truly be said to arise under the Constitution or a law or a treaty of the United States whenever its correct decision depends upon the construction of either. Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim, or protection, or defense of the party, in whole or in part, by whom they are asserted. Story, Const., sec. 1647. It was said in *Osborne* v. *Bank* (9 Wheat. 738), 'When a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.' And a case arises under the laws of the United States, when it arises out of the implication of the law."

In cases of the character of the one at bar the rulings of the lower Federal courts have uniformly been to the effect that they arose under the Constitution and laws of the United States. *Tift* v. *Southern Railway Co.,* 123 Fed. Rep. 789, 793; *Northern Pacific Ry. Co.* v. *Pacific, &c. Ass'n,* 165 Fed. Rep. 1, 9; *Memphis Cotton Oil Co.* v. *Illinois Central R. R. Co.,* 164 Fed. Rep. 290, 292; *Imperial Colliery Co.* v. *Chesapeake & O. Ry. Co.,* 171 Fed. Rep. 589. And see *Sunderland Bros.* v. *Chicago, R. I. & P. Ry. Co.,* 158 Fed. Rep. 877; *Jewett Bros.* v. *C., M. & St. P. Ry. Co.,* 156 Fed. Rep. 160. We are of opinion that the case before us may properly be said to be one arising under a law or laws of the United States. As said by Taft, Circuit Judge, in *Toledo, A. A. & N. M. Ry. Co.* v. *Pennsylvania Co. et al.,* 54 Fed. Rep. 730:

"It is immaterial what rights the complainant would have

had before the passage of the interstate commerce law. It is sufficient that congress, in the constitutional exercise of power, has given the positive sanction of federal law to the rights secured in the statute, and any case involving the enforcement of those rights is a case arising under the laws of the United States."

The object of the bill was to enjoin alleged unreasonable rates, threatened to be exacted by carriers subject to the act to regulate commerce. The right to be exempt from such unlawful exactions is one protected by the act in question, and the purpose to avail of the benefit of that act, as well as of the anti-trust act, is plainly indicated by the averments of the bill. Of necessity, in determining the right to the relief prayed for, a construction of the act to regulate commerce was essentially involved.

The jurisdiction of the Circuit Court not being invoked solely upon the ground of diversity of citizenship, it inevitably follows that, as there was no waiver of the exemption from being sued in the court below, that court was without jurisdiction of the persons of the defendants. *In re Keasbey & Mattison Co.,* 160 U. S. 221; *In re Moore,* 209 U. S. 490; *Western Loan Co.* v. *Butte & Boston Min. Co.,* 210 U. S. 368. In the first case, the question involved was as to the jurisdiction of the United States Circuit Court for the Southern District of New York over an action brought in that court by a corporation of Pennsylvania against a corporation of Massachusetts, having its principal place of business in New York City, for infringement of a trade-mark. In the course of the opinion it was said (pp. 228, 229, 230):

"But when this suit was brought, the first section of the Judiciary Act of 1875 had been amended by the act of March 3, 1887, c. 373, as corrected by the act of August 13, 1888, c. 866, in the parts above quoted, by substituting for the jurisdictional amount of $500, exclusive of costs, the amount of $2,000, exclusive of interest and costs; and by striking out, after the clause 'and no civil suit shall be brought before

either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant,' the alternative, 'or in which he shall be found at the time of serving such process or commencing such proceeding,' and by adding 'but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant.' 24 Stat. 552; 25 Stat. 433.

"The last clause is added by way of proviso to the next preceding clause, which, in its present form, forbids any suit to be brought in any other district than that of which the defendant is an inhabitant; and the effect is that, in every suit between citizens of the United States, when the jurisdiction is founded upon any of the grounds mentioned in this section, other than the citizenship of the parties, it must be brought in the district of which the defendant is an inhabitant; but when the jurisdiction is founded only on the fact that the parties are citizens of different States, the suit shall be brought in the district of which either party is an inhabitant. And it is established by the decisions of this court that, within the meaning of this act, a corporation cannot be considered a citizen, an inhabitant or a resident of a State in which it has not been incorporated; and, consequently, that a corporation incorporated in a State of the Union cannot be compelled to answer to a civil suit, at law or in equity, in a Circuit Court of the United States held in another State, even if the corporation has a usual place of business in that State. *McCormick Co.* v. *Walthers,* 134 U. S. 41, 43; *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202. Those cases, it is true, were of the class in which the jurisdiction is founded only upon the fact that the parties are citizens or corporations of different States. But the reasoning on which they proceeded is equally applicable to the other class, mentioned in the same section, of suits arising under the Constitution, laws, or treaties of the United

States; and the only difference is that, by the very terms of the statute, a suit of this class is to be brought in the district of which the defendant is an inhabitant, and cannot, without the consent of the defendant, be brought in any other district, even in one of which the plaintiff is an inhabitant.

　　*　　　*　　　*　　　*　　　*　　　*　　　*　　　*

"This suit, then, assuming it to be maintainable under the act of 1881, is one of which the courts of the United States have jurisdiction concurrently with the courts of the several States. The only existing act of Congress, which enables it to be brought in the Circuit Court of the United States, is the act of 1888. The suit comes within the terms of that act, both as arising under a law of the United States, and as being between citizens of different States. In either aspect, by the provisions of the same act, the defendant cannot be compelled to answer in a district of which neither the defendant nor the plaintiff is an inhabitant. The objection, having been seasonably taken by the defendant corporation, appearing specially for the purpose, was rightly sustained by the Circuit Court."

We are of opinion that the jurisdictional statute of 1888 is applicable, even upon the assumption that the cause of action was alone cognizable in a court of the United States, as the particular venue of the action was not provided for elsewhere than in that statute.

The pleas to the jurisdiction of the Circuit Court having been seasonably made, should have been sustained and the bill dismissed, without prejudice, for want of jurisdiction over the persons of the defendants. As, however, practically the same result will be reached by the decree entered in the Circuit Court of Appeals, which ordered the reversal of the decree of the Circuit Court and remanded the cause, with instructions to dismiss the bill without prejudice, we affirm that decree without expressing an opinion as to the merits of the reasoning upon which it was based.

*Affirmed.*

MR. JUSTICE HARLAN, dissenting

I cannot agree to the opinion in this case, and will briefly state the reasons for my dissenting.

The plaintiffs in error, citizens of Georgia, brought this suit in equity in the Circuit Court of the United States for the Southern District of Georgia against the defendants in error, corporations of several different States, other than Georgia. The relief sought was a decree enjoining those corporations from putting in force and maintaining in Georgia certain rates established by agreement among themselves. It seems to me that this case could have been disposed of upon the authority of *Baltimore & Ohio Railroad Co.* v. *Pitcairn Coal Company,* recently decided, *ante,* p. 481, in which the court held, in substance, that shippers, who complain of rates adopted by interstate carriers, cannot obtain relief by an original suit brought in any court, Federal or state, but must make application, at the outset, to the Interstate Commerce Commission. This, I think, is all that need have been said; for, whatever interpretation was given to the Judiciary Act of 1888, (25 Stat. 433,) the Circuit Court would have been required, under the case just cited, to decline jurisdiction. But the court, in its wisdom, does not refer to this view of the case and deems it necessary to determine whether the plaintiffs, citizens of Georgia, may, under the Judiciary Act of 1888, considered alone, invoke the jurisdiction of the Circuit Court, held in that State, against the defendant corporations of other States.

If I correctly interpret the opinion of the court, it proceeds on the theory that if the action had been founded alone on diversity of citizenship the suit—although the defendants were corporations of other States—could have been maintained in the United States Circuit Court sitting in Georgia, that being the State of the residence of the plaintiffs. But as the plaintiffs were so unfortunate as to possess and, in their pleadings, to assert, in addition to diversity of citizenship, a Federal right and to seek to have that right protected by the

Federal court against the illegal acts of the defendant corporations, they must now either go into a state court of Georgia, in order to obtain the desired relief, or go to the respective States, however distant, which incorporated the defendants and sue there. Certain cases are referred to as requiring this construction of the act of 1888—*McCormick Harvesting Machine Co.* v. *Walthers*, 134 U. S. 41; *Shaw* v. *Quincy Mining Company*, 145 U. S. 444, and *In re Keasbey and Mattison Co.*, 160 U. S. 221. But I cannot perceive that there was in either of those cases such a question as the one just stated. Neither of them actually involved or decided any such question. The *McCormick case* was a suit in the Circuit Court of Nebraska, by a citizen of that State, against an Illinois corporation, having an agent in Nebraska. The defendant pleaded that, as it was not an inhabitant of Nebraska, it could not, under the act of 1888, be sued in that State. But this plea was overruled by the court below and this court held that the McCormick Company, although not an inhabitant of Nebraska, was liable to be sued in the Federal court held in the State of the plaintiff's residence. Nothing more was involved or decided in that case. The *Shaw case* was a civil suit brought in the Federal court, sitting in New York, by a citizen of Massachusetts against a citizen of Michigan. But although the parties were citizens of different States, neither the plaintiff nor the defendant resided in or was a citizen of the State in which the suit was brought. What was really involved in that case and what was decided appears from the last paragraph of the opinion of this court, as follows (p. 453): "All that is now decided is that, under the existing act of Congress a corporation, incorporated in one State only, cannot be compelled to answer, in a Circuit Court of the United States held in another State in which it has a usual place of business, to a civil suit, at law or in equity, *brought by a citizen of a different State.*" In the *Keasbey-Mattison case* it appears that the suit was brought, in the Federal court of New York, by a Pennsylvania corporation against a Massachusetts corporation. What

the court said leaves no doubt as to what was intended to be decided. It said: "This suit, then, assuming it to be maintainable under the act of 1881, is one of which the courts of the United States have jurisdiction concurrently with the courts of the several States. The only existing act of Congress, which enables it to be brought in the Circuit Court of the United States, is the act of 1888. This suit comes within the terms of that act, both as arising under a law of the United States, and as being between citizens of different States. In either aspect, by the provisions of the same act, the defendant cannot be compelled to answer in a district of which *neither the defendant nor the plaintiff is an inhabitant.*" Whatever general expressions are to be found in the opinions in the cases cited neither of those cases is an authority for the broad, unqualified statement that the United States Circuit Court, held in a State of which the plaintiff is a citizen, may not take cognizance of a suit brought by him in a Federal court against a corporation of another State, where such suit presents a controversy between citizens of different States and, *in addition*, discloses the fact that the plaintiff claims a Federal right which needs to be protected against the wrongful or illegal acts of the defendant corporation. This proposition is, of course, subject to the condition that the foreign corporation, by having an agency in Georgia or otherwise, can be reached by some process and brought into the Federal court sitting in Georgia. It is inconceivable, I think, that Congress intended to deprive the Federal court, sitting in the State of the plaintiff's residence of jurisdiction to protect his Federal right, simply because it appears from the record that the defendant and the alleged wrongdoer are citizens of different States. It necessarily follows from the opinion of the court in this case that where a citizen of another State is sued in a state court, and the suit involves a Federal right claimed by the plaintiff, the defendant cannot remove the case to the Federal court, but *must* remain in the state court of original jurisdiction, and there defend his asserted Federal right. The state court might well say, under

the opinion just delivered, that although the controversy between the parties involves Federal rights, and presents a controversy between citizens of different States, as well as one arising under the Constitution and laws of the United States, it is a suit of which the Federal court could not take cognizance by removal. We so say because such a case could not, under the court's present view of the act of 1888, have been originally brought in that court, and because, according to the settled doctrines of this court, no case can be removed from a state court to a Federal court which could not have been originally brought in the latter court. *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454; *Arkansas* v. *Coal Co.*, 183 U. S. 185; *Joy* v. *St. Louis*, 201 U. S. 332, 340–1.

I recognize the fact that the act of 1888 was not drawn with precision. But I am of opinion that as the act gives the Circuit Court original jurisdiction, concurrent with the courts of the several States, "of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, . . . in which there shall be a controversy between citizens of different States," the intention of Congress would be best effectuated by holding that the jurisdiction of the Circuit Court is not excluded, in a controversy between citizens of different States, simply because the plaintiff, who sued in the Federal court held in the State of his residence, asserts a Federal right and seeks to have it protected against the illegal acts of the defendant, a citizen of another State; provided, always, that the defendant, if a corporation of another State, may, through agents conducting its business in the State where the suit is brought, be reached by the process of the court and subjected to its authority. The presence in the case of a Federal right asserted by the plaintiff ought not prejudice him and does not, I think, alter the fact that the controversy is one of which a Circuit Court may take cognizance, because it is a controversy between citizens of different States.