CENTRAL WEST PUBLIC SERVICE CO. et al. v. CRAIG et al.

No. 9939.

Circuit Court of Appeals, Eighth Circuit.

April 4, 1934.

W. C. Fraser, of Omaha, Neb. (Hird Stryker, and E. B. Crofoot, both of Omaha, Neb., and Ross, McConnell & Watts, of Chicago, Ill., on the brief), for appellant Central West Public Service Co.

J. A. C. Kennedy, E. J. Svoboda, and Ralph Svoboda, all of Omaha, Neb., for appellants Alfred Bersted and Robert E. Wessling.

John C. Mullen, of Falls City, Neb., and Arthur F. Mullen, of Omaha, Neb. (Paul P. Massey, of Omaha, Neb., on the brief), for appellees.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This appeal presents for review two orders of the lower court, one an order entered in a suit entitled H. G. Craig, L. F. Troxel, William Berry, and C. L. Wakefield, plaintiffs, v. Central West Public Service Company, a Delaware Corporation, First Union Trust & Savings Bank, a corporation, Trustee, and John C. Mechem, Trustee, defendants, Equity No. 1289, which overruled the special appearance and motion to vacate an ex parte order appointing a receiver in said suit, interposed by the defendant therein, Central West Public Service Company; and the other an order entered in the suit entitled Vera M. Kirkpatrick and Roland J. Wachter, Trustee, plaintiffs, v. Central West Public Service Company, a Delaware Corporation, First Union Trust & Savings Bank, a corporation, Trustee, John C. Mechem, Trustee, Max McGraw, Judson Large, and Omaha National Bank, a corporation, defendants, Equity No. 1290, consolidated by the court on its own motion with said suit Equity No. 1289, and which last-named order also adjudged and decreed that a receiver be appointed for the defendant Central West Public Service Company and all of the assets and properties of that company wheresoever situate in the states of Nebraska, North Dakota, South Dakota, Minnesota, and Iowa, with authority to take over into his possession all the property of said defendant, and restraining all officers, agents; and all persons claiming under the defendant from interfering with the receiver, and enjoining creditors and others from instituting or prosecuting, or continuing the prosecution of any action at law against the defendant in any court, authorizing the receiver to operate and conduct the business affairs of the defendant corporation, and conferring upon such receiver other very sweeping powers and authority.

We shall first refer to the special appearance and motion to vacate the ex parte order appointing a receiver in the Craig suit.

The plaintiffs in that suit are residents and citizens of Texas and Arkansas, while the defendant Central West Public Service Company is a corporation organized under the laws of Delaware, and the other defendants are nonresidents of the state of Nebraska. By its special appearance, the defendant Central West Public Service Company challenged the jurisdiction of the court to entertain the suit for the reason that it appeared that neither the plaintiffs nor the defendants were inhabitants or residents of the District of Nebraska, and on the further ground that it appeared upon the face of the complaint that the amount in controversy did not exceed, exclusive of interest and costs, the sum of $3,000.

In the Craig Case, as has already been noted, an ex parte order was entered, appointing a receiver. This receiver was by order of court vested with the usual powers of an equity receiver, was clothed with authority to conduct the business and affairs of the defendant company, and to wind up

its affairs. Pursuant to this order, the receiver at once went into possession of the properties of the defendant Service Company situated in the states of Nebraska, South Dakota, North Dakota, Minnesota, and Iowa.

This order was entered December 4, 1933, and on December 8, the service company entered its special appearance, challenging the jurisdiction of the court. This special appearance was noticed for hearing on December 9, 1933, but the hearing was postponed until December 14. On December 13, plaintiffs, by leave of court, amended their complaint, and on December 12, bill of complaint was filed in No. 1290, Vera M. Kirkpatrick et al. v. Central West Public Service Company, et al., above referred to.

The language of the complaints is substantially the same in each suit. In the Kirkpatrick Case, motion was filed with the filing of the complaint, asking for the appointment of a receiver, and that motion was brought on for hearing on December 14, the time fixed for hearing the special appearance and motion in the Craig Case. On that date, the service company filed objections to the appointment of a receiver in the Kirkpatrick Case, and both matters were heard on that date, but we shall now refer only to the Craig suit.

In that suit, the court declined to pass on the special appearance, and did not do so until it entered its order appointing a receiver in the Kirkpatrick Case, January 4, 1934, at which time the court, on its own motion, consolidated both suits.

In the bill of complaint in the Craig suit it is alleged that the plaintiffs are the legal and equitable owners and holders of certain first mortgage bonds issued and delivered by the defendant service company in the sum of $5,000, said bonds being secured by a first lien deed of trust on all the physical properties of the defendant service company, and that they are also the owners of certain debentures executed by the service company, these being inferior to the first mortgage bonds; that there has been default in the payment of the interest on these securities since the 1st of May, 1932. It is then alleged that the suit is brought "by the plaintiffs as a creditors' bill for and on behalf of themselves and all other creditors similarly situated to the plaintiffs who may elect to join in the prosecution of this suit"; that the defendant corporation is insolvent; that on account of adverse financial conditions and improper conduct of the business of the defendant, the plaintiffs are in danger of losing their debt, unless the properties of the defendant are impounded by the court and placed in the hands of a receiver; that the defendant holds property, real and personal, in the states above mentioned; that the liquid assets are being sent out of Nebraska to the office of the company in Chicago; that profits of the business from the five states mentioned are being withdrawn and sent to the office of the company in Chicago; that the defendant has made default in the payment of interest and taxes; that its income is insufficient to pay its taxes and interest, and that it is insolvent; that its physical properties are deteriorating; that its officers are mismanaging its business and dissipating its liquid assets; that although the trust deed provides that 12½ per cent. of the gross revenue shall be set aside annually to create a fund to liquidate the bonds, no part of the gross revenue has been appropriated to that end for the years 1928 to 1933, inclusive, and that the trustees named in the trust deeds have placed themselves in a position hostile to the trust.

As has been observed, the receiver was in possession under this ex parte appointment for at least one month before he was appointed in the Kirkpatrick Case, so that if there was no jurisdiction to enter the ex parte order in the Craig Case, it cannot be said that this was cured by the appointment of a receiver one month later in the Kirkpatrick Case.

At the time of the entry of the ex parte order there was nothing to indicate what securities were owned by the plaintiffs, other than the $5,000 in bonds. True, it is alleged that the plaintiffs owned debentures, but it is not disclosed in what amount.

So far as the special appearance and motion to vacate is concerned, it, strictly speaking, raises only a jurisdictional question, but we cannot refrain from referring to the appointment of a receiver in that case without notice to the defendant, because even if the court had jurisdiction we think it would have been an abuse of discretion to make such appointment upon the showing made, without notice to the service company. The remedy is not only an extraordinary one, but is harsh, drastic, and severe [Brictson Mfg. Co. v. Close (C. C. A. 8) 280 F. 297], and as a general rule such action should not be taken without affording the defendant an opportunity to be heard. We do not mean to be understood as saying that the court is without power to appoint without notice to the defendant, but such power should, if at all, be

exercised sparingly and with great caution, and only under extreme and exceptional circumstances [Joseph Dry Goods Co. v. Hecht (C. C. A. 5) 120 F. 760; Cabaniss v. Reco Min. Co. (C. C. A. 5) 116 F. 318; North American Land & Timber Co. v. Watkins (C. C. A. 5) 109 F. 101; Mann v. Gaddie (C. C. A. 5) 158 F. 42; Huff v. Bidwell (C. C. A. 5) 151 F. 563].

To warrant the appointment of a receiver upon an ex parte application, and without notice, there should be a very clear and convincing showing that only by such appointment can the interests of justice be served. We realize that the appointment of a receiver is one of the most difficult and embarrassing duties which a court of equity is called upon to perform. It is a peremptory proceeding by which the defendant is deprived of the possession of his property before final judgment or decree. Where plaintiff insists on the appointment of a receiver for a going concern on an ex parte showing, the court should, in the exercise of its judicial discretion, in addition to other precautions, require the applicant to furnish a bond or undertaking to the effect that if it shall be held that the order appointing receiver was erroneously or improvidently made, then the plaintiff will pay all costs and damages which the defendant may sustain by reason of the appointment of the receiver.

By section 112 of title 28 USCA, it is, among other things, provided that:

"Where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

■■ In the instant case, the defendant made timely special appearance, objecting to the jurisdiction of the court. Strictly speaking, it may be said that it is a question of venue, rather than a question of jurisdiction, but where seasonable objection is made under a special appearance, the court is without jurisdiction to proceed where jurisdiction is dependent upon diversity of citizenship and neither party is a resident of the district in which the suit is brought. Seaboard Rice Mill. Co. v. Chicago, etc., Ry. Co., 270 U. S. 363, 46 S. Ct. 247, 70 L. Ed. 633; Luckett v. Delpark, Inc., 270 U. S. 496, 46 S. Ct. 397, 70 L. Ed. 703; Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 S. Ct. 81, 54 L. Ed. 1069; Ex parte Wisner, 203 U. S. 449, 27 S. Ct. 150, 51 L. Ed. 264. In the Craig Case, neither of the parties reside in Nebraska. The defendant service company is a Delaware corporation, and hence within the meaning of the jurisdictional statutes, a resident of the state of Delaware, and not a resident or inhabitant of any other state, even though it may be engaged in business within such other state. Seaboard Rice Mill. Co. v. Chicago, etc., Ry. Co., 270 U. S. 363, 46 S. Ct. 247, 70 L. Ed. 633; In re Keasbey & Mattison Co., 160 U. S. 221, 16 S. Ct. 273, 40 L. Ed. 402; Macon Grocery Co. v. Atlantic C. L. R. Co., 215 U. S. 501, 30 S. Ct. 184, 54 L. Ed. 300; United States v. Northern Pacific R. Co. (C. C. A. 8) 134 F. 715.

In Seaboard Rice Mill. Co. v. Chicago, etc., Ry. Co., supra, an action was brought in the District Court for the Eastern District of Missouri, to recover damages sustained through the negligence of a railway company. The railway company appeared specially and filed a plea to the jurisdiction, on the ground that neither it nor the plaintiff was a resident or inhabitant of the district. The plea was sustained. The matter being taken to the Supreme Court on writ of error, that court in its opinion, among other things, said:

"While this provision does not limit the general jurisdiction of the District Courts, it confers a personal privilege on the defendant, which he may assert, or may waive, at his election, if sued in some other district. Lee v. Chesapeake Railway, 260 U. S. 653, 655, 43 S. Ct. 230, 67 L. Ed. 443; and cases cited. If this privilege is seasonably asserted, the suit must be dismissed for want of jurisdiction over the person of the defendant, Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 510, 30 S. Ct. 184, 54 L. Ed. 300; and cases cited."

■ It seems clear then, that the lower court should have sustained the motion to dismiss, unless as contended by appellees, the privilege was waived. This claim of waiver is predicated upon the fact that in its motion challenging the jurisdiction of the court, defendant urged two grounds, one that neither the plaintiffs nor the defendants were inhabitants or residents of the district of Nebraska, and the other that it appeared upon the face of the complaint that the matter in controversy did not exceed, exclusive of interest and costs, the sum of $3,000. We are of the view that this was not a waiver, and that the defendant did not subject itself to the jurisdiction of the court, but its only purpose was to challenge that jurisdiction. Camp v. Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997; Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 S. Ct. 81, 54 L. Ed. 1069; Armstrong v. Langmuir (C. C. A. 2) 6 F.(2d)

369, 370; Wilson v. Beard (C. C. A. 2) 26 F.(2d) 860, 863; Smith v. Government of Canal Zone (C. C. A. 5) 249 F. 273; Kelley v. T. L. Smith Co. (C. C. A. 7) 196 F. 466.

In Armstrong v. Langmuir, supra, the Circuit Court of Appeals of the Second Circuit, in an opinion by Judge Hand, said:

"Assuming, as the plaintiffs wish us to do, that the suit is in personam, the De Forest Company was clearly right in its motion to dismiss as to itself. The appellants concede as much, but argue that by coupling with the motion to dismiss for lack of jurisdiction the motion to dismiss the bill as to all the defendants the company appeared generally. We think not. While of course we agree that a special appearance and motion to dismiss for lack of personal jurisdiction cannot be coupled with a motion upon the merits, it seems to us that the two motions here coupled do not fall within that rule."

The same court, in Wilson v. Beard, supra, said:

"It is argued that the appellee waived his right to ask for a dismissal below because he not only asserted his privilege of a personal suit in the District Court but urged that the court lacked jurisdiction of the subject-matter, and, further, that he failed to move to set aside the order of service of the subpœna in Oklahoma. There was no general appearance, nor was a demurrer filed, presenting arguments addressed to the jurisdiction of the court and on the merits of the case, as in St. Louis & S. F. R. R. Co. v. McBride, 141 U. S. 127, 11 S. Ct. 982, 35 L. Ed. 659, and Western Loan & Sav. Co. v. Butte & Boston Mining Co., 210 U. S. 368, 28 S. Ct. 720, 52 L. Ed. 1101. Appellee limited his appearance to the motion to dismiss. He sought to raise no question as to the merits."

The question is treated as one of no importance by appellees because it is asserted that there is no question at all of the jurisdiction of the court in the Kirkpatrick Case, and the relief asked in the two cases is identical, and the subject-matter of the bills of complaint are substantially the same. However that may be, a receiver was in charge of the defendant's property under this ex parte order a month before the appointment of a receiver in the Kirkpatrick Case, so that the question is not a moot one.

We conclude on this phase of the case that the court erred in overruling defendant's special appearance and motion to vacate the ex parte order appointing a receiver.

The Kirkpatrick suit was apparently brought in aid of the Craig suit, and, as has already been observed, the allegations in each bill are substantially the same, and each suit seems to have been promoted by a Mr. S. R. Morgan. While it is averred in the Kirkpatrick Case that the plaintiff Kirkpatrick owned $30,000 worth of 6 per cent. bonds and $5,000 in debentures, it conclusively appears from the testimony that the securities held by her were $5,000 in bonds, $28,000 in debentures, and $2,000 in gold notes, while the plaintiff Wachter, trustee, held $10,000 face value of debentures, holding them "in trust for the use and benefit of Samuel R. Morgan, Jr." Mr. Wachter, called as a witness, testified that he had never seen S. R. Morgan, Jr., the beneficiary of the trust; that he knew S. R. Morgan, Sr.—"he is in the court room; he is the gentleman sitting behind counsel for plaintiffs during the trial here," and that S. R. Morgan requested him to act as trustee on December 11, 1933, and that was the first he knew anything about the transaction.

Mr. Morgan testified that he turned the debentures in question over to Wachter as trustee, knowing that there had been a pleading filed attacking the jurisdiction of the court in the Craig Case, and that he turned them over to Wachter as trustee solely for the reason that he was a citizen of Nebraska, and solely for the purpose of having him join in a suit for the receivership of the defendant company.

Prior to the commencement of either of these suits, plaintiffs in the Craig Case commenced a suit in the state court in Texas, which suit was later removed to the federal court, where it was set for hearing December 22, 1933, and continued at the request of counsel for plaintiffs because of the inability of S. R. Morgan to be in attendance. In the Texas case, the court required plaintiffs to deposit the securities claimed to be owned by them, as a bond against damages if it should be determined that the receivership should not have been granted, but plaintiffs were unable to produce the securities. Counsel in that case, being requested to give the numbers of the debentures claimed by their clients, advised that they could not give the numbers because the securities involved in the Texas suit were also involved in suits then pending in the United States District Court for the District of Nebraska, and that S. R. Morgan was directing the Texas litigation. Later, however, counsel for plaintiffs in the

Texas suit advised that their clients owned debentures numbered M—1140 to M—1151, inclusive; M—11 to M—17, inclusive, and M—20 to M—25, inclusive.

Referring now to the holdings of the plaintiff Kirkpatrick, it appears that she too claims to own debentures numbered M—1140 to M—1151, inclusive; M—11 to M—17, inclusive, and M—20 to M—25, inclusive, the identical debentures claimed by Craig and others in the Texas suit. Mrs. Kirkpatrick testified that she had acquired a part of these debentures in August, 1933, and the remainder about November 15; but it appears that all of these debentures were on November 15, 1933, sold by security dealers in Chicago to Robert Maxwell & Co., and were delivered to that company at that time, so that these securities seem to have gone through something of a circuitous route before they became the basis of the Kirkpatrick suit. It appears in any event that these so-called debentures are not secured by any mortgage or trust deed, and are simple contract claims. Referring to these securities, counsel for appellees in their brief say:

"These debentures are merely the notes of the defendant Company and while the debenture consists of 42 pages, it appears that the only real purpose of issuing this trust agreement was to create a condition that would prevent the owners of these notes from maintaining a suit."

As simple contract claims, they conferred no right upon the plaintiffs to the appointment of a receiver. Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 483, 67 L. Ed. 871; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 455, 67 L. Ed. 763; Hollins v. Brierfield Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; Home Mortgage Co. v. Ramsey (C. C. A. 4) 49 F. (2d) 738.

In Lion Bonding & Surety Co. v. Karatz, supra, the Supreme Court, in holding that the motion to dismiss the bill should have been granted, said:

"There was want of equity, for it was brought by an unsecured simple contract creditor."

In Pusey & Jones v. Hanssen, supra, the court said:

"A receiver is often appointed upon application of a judgment creditor who has exhausted his legal remedy. See White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67. But an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property, and although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course."

We may, therefore, eliminate from consideration all claims held by the plaintiffs in the Kirkpatrick suit except the bonds.

The appointment of a receiver is an ancillary, incidental remedy only, and is not final relief nor is it properly the end or object of the litigation, but is a remedy allowable only in connection with a suit pending for some other purpose in which there is a prayer for ultimate relief which the court has jurisdiction to grant, and to which the appointment of a receiver is an aid. Pusey & Jones Co. v. Hanssen, supra; Brictson Mfg. Co. v. Close (C. C. A. 8) 280 F. 297; United States v. Sloan Shipyards Corp. (D. C.) 270 F. 613; Zuber v. Micmac Gold Min. Co. (C. C.) 180 F. 625.

So far as these debentures are concerned, it would seem that they should be eliminated from consideration upon still other grounds. So much doubt has been cast upon the bona fides of the ownership and transfer of these securities that they are not entitled to any consideration in a court of equity as the basis of an application for the appointment of a receiver. They have been the subject of manipulation for the apparent purpose of conferring jurisdiction upon the court and securing the appointment of a receiver. The actions of Mr. Morgan in promoting the various suits against the defendant company, including the suit in Texas, in which the federal court denied the application for a receiver, and his employment by the receiver upon his appointment, and his receipt of $1,000 in the month of December, 1933, for certain services largely in the nature of alleged advice furnished the receiver, and his receipt of $500 for the first half of January, 1934, for like services, cast suspicion upon the bona fides of this receivership proceeding. Mr. Morgan's activities have apparently not been entirely altruistic, and we fear he has imposed upon both court and counsel. As said by the court in Home Mortgage Co. v. Ramsey (C. C. A. 4) 49 F. (2d) 738, 744:

"We know that in times of stress, many corporations find themselves embarrassed and in great straits to tide over those periods. We know also that many of them do pass successfully through times of financial distress. If, when those times arrive, and a corporation is struggling to tide them over, a

person with knowledge of the situation can go out and buy a small percentage of outstanding bonds for the simple and sole purpose of creating a receivership, against what the other bondholders and parties in interest believe to be a proper course for them to pursue, many corporations would be in great danger. We think, when all the facts are considered and all the equities balanced, a court of equity should not appoint a receiver in such a case."

See, also, Palmer v. Bankers' Trust Co. (C. C. A. 8) 12 F.(2d) 747; Marion Mortgage Co. v. Edmunds (C. C. A. 5) 64 F.(2d) 248; Tachna v. Pressed Steel Car Co., 112 N. J. Eq. 411, 164 A. 413.

Accepting the ownership of $5,000 of bonds as bona fide, it is argued that this was sufficient to confer upon the court jurisdiction, and that a foreclosure of the trust deed or mortgage given to secure the bonds, of which these are a part, being demanded in the bill of complaint, the appointment of a receiver was warranted. It should first be observed that there are in fact some $10,270,-000 in bonds secured by a first lien upon the defendant's property. An intervener, owning some $18,000 worth of these bonds, opposed the appointment of a receiver, and some 90 per cent. of the outstanding bonds have been deposited under a tentative voluntary plan of adjustment and refunding, so that the holdings of the plaintiffs, as compared with the entire amount of indebtedness, is so small as to be negligible. The only interest which this bondholder can have is that the security back of the bonds be preserved. Neither of the plaintiffs is a stockholder, and has no interest whatever in the management of the company, further than such management may affect the value of his securities. If the property upon which the bonds are a first lien is ample, then, certainly, there is no occasion for taking this property from its owner and placing it in the hands of a receiver.

There was offered in evidence by the plaintiffs, in support of their claim of insolvency, a consolidated balance sheet as of October 31, 1933. This shows the net value of the properties upon which the bondholders have a first lien, deducting depreciation, at $21,575,000, against which there is a first lien of some $10,270,000, of which plaintiffs' bonds are a part. The value as shown on this exhibit was further supported by the oral testimony as being the cost of reproduction new, less depreciation.

The power to appoint a receiver of mortgaged premises, for the protection of the mortgagees, or in aid of actions for the foreclosure of mortgages, is well established, but it should be exercised with great caution, and, generally speaking, equity will not interfere by the appointment of a receiver in such a suit unless it is clearly shown that the security is inadequate, or that there is imminent danger of destruction, waste, or removal of the property. Indeed, it has been held that to entitle the mortgagee to the appointment of a receiver, there must be satisfactory proof, both as to the inadequacy of the security and the insolvency of the mortgagor or other person liable for the debt, and that unless both these conditions are satisfactorily shown to exist, no sufficient cause is presented. In the instant case, there is no allegation that the security is inadequate, although there is an allegation that the plaintiffs are in danger of losing their debt, which is, of course, a mere conclusion.

In Tardy's Smith on Receivers (2d Ed.) § 242, it is said:

"At least a very strong probability of the inadequacy of the security must be properly proved. The inadequacy must relate to the petitioning mortgagee's indebtedness without any reference to subsequent encumbrances. An allegation that the property is not worth the amount of all liens against it is not sufficient. The burden of proof is on the petitioner and the presumption is that the security is adequate. The inadequacy must be a present condition, existing at least at the time of the hearing and not a threatened one, merely possible or even likely to come into being."

On this record it cannot be claimed that the security is inadequate, for the proof indicates that it has a value in excess of double the amount of the secured indebtedness. But it is urged that at least it has been shown that the defendant is insolvent. If by insolvency is meant inability to meet current debts as they mature, the proof may be sufficient to sustain that allegation, but if by insolvency is meant that the defendant's total liabilities exceed the total value of its assets, then, we think, insolvency has not been shown. It is true that the second page of the consolidated balance sheet referred to indicates under the heading "Earned Surplus," a deficit of $256,932.95, but that, we take it, is more or less of a bookkeeping entry because it appears on this same page that there has been set up as a liability the common stock of the company, amounting in the aggregate to $6,674,-149.93. In determining whether or not a corporation is insolvent, liability to its stock-

holders on its capital stock is not, of course, to be taken into consideration. Shearer v. Farmers' Life Ins. Co. (C. C. A. 8) 262 F. 861; Ratcliff v. Clendenin (C. C. A. 8) 232 F. 61; Tepel v. Coleman (D. C.) 229 F. 300. It is only after the final winding up of the affairs of a corporation, and after all creditors have been paid, that stockholders are entitled to come in and receive payment for their stock. So far as creditors are concerned, the ability of the corporation to respond to its stockholders for the value of their stock is of no consequence whatever. As to creditors, the inquiry is whether the corporation has ample property to pay them, and not whether it has property sufficient to pay off every stockholder after paying off its debts to creditors. If, therefore, we eliminate this stock liability, the defendant is not insolvent in the sense that its liabilities exceed its assets, and hence, on the merits the plaintiffs in this foreclosure suit are not entitled to the appointment of a receiver.

By the terms of the trust deed securing the bonds, it is provided that if default is made in payment of interest, which continues for a period of ninety days, the trustee may, in its discretion, and upon the written request of the holders of 25 per cent. of the principal amount of the bond, shall take possession of the property secured by the mortgage and operate the same; that the trustee may accelerate the maturity of the principal amount in case of default, and shall do so upon the request of 25 per cent. of the bondholders. It is then provided that:

"No holder of any bond shall have the right to institute any suit, action or proceedings at law or in equity upon or in respect of this mortgage or for the execution of any trust or power hereof, or for any other remedy under or upon this mortgage unless such holder shall previously have given to the trustees written notice of the existing default; * * * nor unless, also, the holders of at least 25% in aggregate principal amount of all the bonds then outstanding shall have requested the trustees in writing to take action in respect of such default and the trustees shall have declined to take such action or shall have failed to do so within thirty days thereafter."

This provision is binding on the plaintiffs. Allan v. Moline Plow Co. (C. C. A. 8) 14 F. (2d) 912; Home Mortgage Co. v. Ramsey (C. C. A. 4) 49 F.(2d) 738; Rodman v. Richfield Oil Co. (C. C. A. 9) 66 F.(2d) 244.

It is conceded that no such demand has been made, but it is contended that the trustees are disqualified. In view of other issues which we have considered, it seems unnecessary to give this contention extended consideration as we are of the view that it is not tenable. This is not a proceeding to remove the trustees. No acts of fraud have been proved or charged against them, and it does not appear that a demand upon them as required by the trust deed would have been futile, and hence, the plaintiffs cannot maintain this suit. Palmer v. Bankers' Trust Co. (C. C. A. 8) 12 F.(2d) 747; Allan v. Moline Plow Co. (C. C. A. 8) 14 F.(2d) 912; Guaranty Trust Co. v. Chicago, M. & St. P. Ry. Co. (D. C.) 15 F.(2d) 434; Rodman v. Richfield Oil Co. (C. C. A. 9) 66 F.(2d) 244.

There are many general allegations of mismanagement, and it is pointed out that the earnings of the company have materially decreased within the last two or three years, and it is suggested that the officers of the defendant are promoters. It appears, however, that they have been successfully managing these properties during the past ten years; that up until 1932 at least they paid the interest on all their outstanding funded debt, and it appears that they have made substantial reductions in their expenses, and the decrease in the income from the company's various plants is such as other similar businesses have been experiencing and is not attributable to mismanagement. It is charged that the officers of the company have been diverting the funds of the company and having them transmitted from its office in Omaha to certain individual officers of the company in Chicago, but this allegation stands disproved by the undisputed testimony. The general officers of the company have offices in Chicago, and the company there carries the substantial part of its bank account. There has been absolutely no change in the method of handling its funds, and they have been transmitted to the bank in Chicago and deposited to the credit of the company in accordance with the established usage of many years.

It should be observed that the properties of the defendant are separate properties and not fixed property extending into several states, like interstate railroads and pipe lines.

We have carefully considered other contentions of counsel, but as we are of the view that the orders appealed from must be reversed, we pretermit any further discussion of the issues.

It follows that the order overruling the motion to vacate the ex parte order appointing receiver in the Craig Case, and the order appointing receiver in the Kirkpatrick Case,

are reversed, and the cause is remanded to the lower court with directions to take such further proceedings consistent herewith as shall restore the property taken over by the receiver to the possession of the defendant Central West Public Service Company, free and clear from all liability or charges on account of fees, salary, costs, and expenses attributable to such receivership, such receivership cost and expenses being taxable against the applicants for receiver [Close v. Brictson Mfg. Co. (C. C. A. 8) 49 F.(2d) 751; Fulp v. McCray (C. C. A. 8) 21 F.(2d) 951], and for such further proceedings consistent with this opinion as may be necessary to carry out the decision of this court.

It is further directed that the mandate of this court issue forthwith.